THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* L. C. DAVIS, Defendant-Appellant.

First District (1st Division)    No. 80-535

Opinion filed June 8, 1981.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and George M. Velcich, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

L.C. Davis was charged by indictment with rape and robbery. The jury returned a verdict of guilty and defendant was sentenced to 28 years for rape and seven years for robbery. Defendant appeals.

On appeal, defendant argues that (1) his identity was not proved beyond a reasonable doubt and (2) the cause should be remanded for resentencing.

We affirm.

At trial, the complainant testified that at approximately 4 p.m. on December 4, 1978, she returned to her hotel room in Chicago. While watching television, she heard someone call "room service" and a knock on her door. She opened the door, unlatched the chain, and a man whom she identified as defendant forced the door open and entered her room.

Defendant threatened to kill the complainant if she spoke and placed his hand in his coat pocket. The complainant believed defendant was armed. She was then ordered to undress. Defendant removed his coat, pants, and underwear and forced complainant to engage in intercourse. About one minute later, defendant arose and dressed himself. He pulled the telephone cord from the socket, threatened to kill complainant if she

spoke, and took $40 after searching complainant's purse and valise. As defendant left the room, he warned complainant that he would kill her if she followed him.

When the police arrived, she described her assailant as black, 25 years old, slightly taller than six feet, about 160 pounds, with a gold earring, and straightened black hair. He was wearing dark slacks and a gray herringbone coat. The coat was admitted into evidence and complainant stated it did not appear to be gray.

Police officers took complainant to a hospital where a vaginal smear was taken. The parties stipulated that laboratory tests indicated the presence of sperm.

When complainant returned to the hotel, police investigators showed her two albums containing approximately 400 photographs. She did not identify any of those portrayed as her assailant. Investigator Dorociak testified that defendant's photo was not among those shown to complainant. Several weeks later, police mailed complainant eight photos. She identified defendant's photograph. On January 26, 1979, she viewed a lineup of five men and identified defendant as her assailant.

William Arnos, a Chicago police officer, testified that he arrested defendant about one week after the incident. Defendant's height was six feet, one inch. He weighed 160 pounds, wore earrings in his right ear and combed his hair back.

Defendant testified that he had three tattoos on his upper body: a four-inch-by-one-inch tattoo on his chest reading "Scorpio", a three-inch-by-three-inch tattoo on his upper right arm reading "Mom", and a two-inch-by-three-inch tattoo on his left forearm reading "L.C." He received the first two tattoos in 1973 and the latter in 1978. He was not in the hotel on the day in question. He had ear piercing for two, not one, earrings and had a brown, not beige, herringbone coat.

Allen Slakis, a Chicago police officer, testified that the record of his interview with the complainant indicated that defendant removed all his clothes. The complainant could not recall making this statement to police.

First, defendant contends that he was not proved guilty beyond a reasonable doubt because complainant's identification testimony was doubtful. Defendant points to complainant's statement to police immediately after the incident that defendant removed all his clothing and her failure to notice his tattoos. He also alleges that the room was dimly lit and complainant would have had difficulty observing his features.

The identification testimony of a single witness is sufficient to convict if the identification is positive and the witness is credible. (*People v. Tate* (1978), 64 Ill. App. 3d 1, 380 N.E.2d 976; *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.) The important factor is the ability of the witness to make a positive identification after having an adequate

opportunity to view the offender at the time of the crime. (*People v. Mendoza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318, citing *People v. Mays* (1976), 38 Ill. App. 3d 182, 347 N.E.2d 235.) Omissions, discrepancies, and inaccuracies in details regarding the description of an assailant are not fatal but only affect the weight given to the identification testimony by the trier of fact. *People v. Mendoza; People v. Mays.*

We first note that, contrary to defendant's contention, the lighting in the hotel room was good. Complainant testified that she switched a lamp on upon entering the room. There is no indication that the lamp, which was adjacent to the bed, had been turned off before the incident. The television set provided additional illumination.

Furthermore, complainant's testimony was not completely undermined by her failure to notice and mention the tattoos. In fact, she testified at trial that defendant removed only his coat, pants and underwear. From this, it could be inferred that defendant never removed his shirt. Complainant's failure to observe defendant's tattoos and her discrepant statement to the police after the incident were, as noted above, matters to be evaluated by the jury.

■■ The record contains overwhelming evidence of complainant's positive identification. Her description of the assailant given shortly after the incident was extremely accurate. She identified defendant in the photographs sent to her home, unhesitatingly identified him in a lineup and again identified defendant at trial. Furthermore, complainant repeatedly testified that she looked at defendant's face during the incident. We therefore find that this testimony was sufficient to establish defendant's identity and his guilt beyond a reasonable doubt.

Second, defendant argues that this case should be remanded for resentencing because the trial court failed to state its reasons for imposing a 28-year sentence for rape. He also argues that in imposing this sentence, the trial court was operating under an erroneous belief that an extended term could be imposed on the rape conviction based upon defendant's prior conviction for burglary.

The trial court is required to state explicit reasons for imposing a sentence. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c); Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(b).) A violation of this rule normally requires that the sentence be vacated and a new sentencing hearing be held. *People v. Rickman* (1979), 73 Ill. App. 3d 755, 391 N.E.2d 1114.

However, the trial court's failure to announce its reasons for imposing a sentence cannot be raised on appeal unless proper objections were made in the trial court. In *People v. Baseer* (1980), 90 Ill. App. 3d 866, 874, 414 N.E.2d 5, 10, the court, quoting from *People v. Taylor* (1980), 82 Ill. App. 3d 1075, 1078, 403 N.E.2d 607, 610, noted:

" 'If defendant had objected to the court's failure to include the statement the error could have been corrected immediately and the need for an appeal avoided. It is clear that the statute entitles defendant to a statement and that it would be error for the court to refuse to make a statement if requested. However, we find that defendant's failure to present the question to the trial court and thereby allow it to supply the omitted statement should preclude him from urging the issue on appeal. *(People v. Trefonas* [(1956), 9 Ill. 2d 92, 136 N.E.2d 817]; *People v. Carraro* (1979), 77 Ill. 2d 75, 394 N.E.2d 1194.)' "

■■ During the sentencing hearing, defendant did not request an explanation from the trial court regarding the imposition of the sentence. The issue was not raised in any post-trial motion. We therefore find that defendant has waived any objections on this point.

■■ We further find that the trial court was not confused as to defendant's eligibility for an extended term sentence on the rape convictions. Rape is a Class X felony. (Ill. Rev. Stat. 1979, ch. 38, par. 11—1.) The maximum sentence which may be imposed for a Class X crime is 30 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(3).) The 28-year sentence imposed in this case is within this limit. The fact that this sentence is so near the maximum may be appropriately attributed to defendant's prior felony conviction and his threats to kill complainant. These are proper factors for the trial court to consider in aggravation of the sentence. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1); Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(3).) We therefore do not believe that the case should be remanded for resentencing.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.