(Nos. 55318, 55335 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. L. C. DAVIS, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ELVIN U. AL-VARDO, Appellant.

*Opinion filed October 22, 1982.—Rehearing denied November 24, 1982.*

156

SIMON, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Gerald T. Winiecki and John Lanahan, Assistant Public Defenders, of counsel), for appellants.

Tyrone C. Fahner, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Melbourne A. Noel, Jr., Assistant Attorney General, and Michael E. Shabat, Lester M. Joseph, and John A. Ward, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE RYAN delivered the opinion of the court:

In each of these consolidated cases (People v. Davis, No. 55318, and People v. Alvardo, No. 55335) the defendant was convicted in the circuit court of Cook County and his conviction was affirmed by the appellate court. This court allowed the defendant's petition for leave to appeal in People v. Alvardo. In People v. Davis, defendant's petition for leave to appeal was originally denied, but that order was later vacated and the case was consolidated with People v. Alvardo in this court.

These consolidated cases present a single issue for review: Do sections 5—4—1(c) and 5—8—1(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—4—1(c), 1005—8—1(b)), requiring the trial court to state its reasons for imposing a particular sentence, impose a mandatory, nonwaivable requirement necessitating remandment upon failure to comply? Section 5—4—1(c) provides:

> "In imposing a sentence for a felony, the trial judge shall specify on the record the particular evidence, information, factors in mitigation and aggravation or other reasons that led to his sentencing determination." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c).)

And section 5—8—1(b) provides:

> "The sentencing judge in each felony conviction shall set forth his reasons for imposing the particular sentence he enters in the case, as provided in Section 5—4—1 of

this Code." Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(b).

Defendant Elvin U. Alvardo was charged by indictment with murder, convicted of voluntary manslaughter after a bench trial, and sentenced to seven years' imprisonment. Defendant L. C. Davis was charged by indictment with rape and robbery, convicted of both offenses after a jury trial, and sentenced to 28 years on the rape conviction and seven years on the robbery conviction. Neither defendant requested or moved for a statement of the court's reasons for the sentence imposed; neither defendant objected to the omission at the sentencing hearing; nor did either defendant raise the objection in a post-trial motion.

At the sentencing hearing of Elvin Alvardo, the court read the presentence report, heard arguments in aggravation and mitigation, and heard a statement by the defendant through his interpreter. At the conclusion the court, without a statement of reasons, sentenced the defendant to a term of seven years. At the sentencing hearing of L. C. Davis, the court, after denying defendant's motion for a new trial, hearing arguments in aggravation and mitigation, and offering the defendant the opportunity to make a statement, pronounced the sentence, without a statement of reasons.

On appeal, the appellate court upheld the conviction of Elvin Alvardo in a Rule 23 order (73 Ill. 2d R. 23). (96 Ill. App. 3d 1198.) With regard to the sentencing issue, the court found that defendant's failure to request a statement of reasons from the trial court and defendant's failure to object to the imposition of a sentence not in conformity with section 5—4—1(c) waived the matter for consideration on review.

The conviction of L. C. Davis was also affirmed on appeal. (97 Ill. App. 3d 235.) With regard to the sentencing issue, the appellate court observed that the failure of the trial court to state explicit reasons for imposing a sentence normally requires that the sentence be vacated and that a

new sentencing hearing be held. The appellate court determined, however, that the trial court's failure to announce its reasons for imposing a sentence cannot be raised on appeal unless proper objections were made in the trial court. The court held that the failure of the defendant to request an explanation from the trial court and the failure to raise the issue in a post-trial motion waived any objections on that point. 97 Ill. App. 3d 235, 239.

In interpreting the statute, the appellate courts have split in deciding whether the right to a statement of reasons is waived on appeal if the defendant fails to demand compliance with the statute in the trial court. Appellate court decisions finding that the duty to specify reasons at sentencing is an independent duty imposed upon the trial court by statute which cannot be waived by either party are: *People v. Rickman* (1979), 73 Ill. App. 3d 755; *People v. Slack* (1980), 81 Ill. App. 3d 557; *People v. Wilson* (1981), 93 Ill. App. 3d 161. The remedy for failure to comply is remandment of the case for a proper sentencing hearing.

Appellate court decisions finding that defendant's failure to present the question to the trial court, thus providing the court with the opportunity to correct the omission, precludes the defendant from raising the issue on appeal are: *People v. Taylor* (1980), 82 Ill. App. 3d 1075, and *People v. Baseer* (1980), 90 Ill. App. 3d 866. The courts agree, however, "that the statute entitles defendant to a statement of reasons and that it would be error for the court to refuse to make a statement if requested." *People v. Taylor* (1980), 82 Ill. App. 3d 1075, 1078; *People v. Baseer* (1980), 90 Ill. App. 3d 866, 874.

Urging that the statutory requirement is a mandatory one, defendants rely on this court's decision in *People v. Youngbey* (1980), 82 Ill. 2d 556. In that case, this court held the presentence investigation and report to be a mandatory legislative requirement which cannot be waived, ab-

sent an agreement between the parties as to the sentence to be imposed. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 561.) That section of the statute provides:

> "A defendant *shall not* be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1.)

That amendment became effective February 1, 1978, and was originally a companion provision to the statutory requirement before us in the instant case. Both provisions are part of a broader statutory scheme which introduced determinate felony sentencing to Illinois. Pub. Act 80—1099, sec. 3, eff. Feb. 1, 1978.

In *Youngbey* we found the presentence report to be mandatory because it was not solely for the benefit of the defendant but for the enlightenment of the court as well. Because it was intended to serve as a "useful tool for the sentencing judge," it was not the defendant's "personal right" which could be waived. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 565.) Also, it was noted in *Youngbey* that the statutory language considered in that case was phrased in the negative, thus prohibiting the imposition of sentence in the absence of compliance with the statute. In that case the statute involved used not merely the word "shall," but coupled it with the negative limitation by providing that the defendant *shall not* be sentenced unless the statute is complied with. *People v. Youngbey* (1980), 82 Ill. 2d 556, 562.

In *Youngbey* we also held that the mandatory presentence report requirement did not constitute a legislative infringement on the judicial function because "[t]he aspect of the sentencing function involved in this section relates solely to a *presentencing* procedure." (Emphasis added.) (*People v. Youngbey* (1980), 82 Ill. 2d 556, 560.) In the cases now before us, the statute does not relate to a presentencing procedure as in *Youngbey*. The statute now under consideration attempts to dictate the actual content of

the judge's pronouncement of sentence.

Article VI, section 1, of the Illinois Constitution of 1970 provides: "The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." Judicial power is not defined in the Constitution, but all such power is exclusively and exhaustively granted to the courts. (*People v. Cox* (1980), 82 Ill. 2d 268, 274; *People v. Jackson* (1977), 69 Ill. 2d 252, 256.) It is, of course, indisputable that the power to impose sentence is exclusively a function of the judiciary. (*People v. Phillips* (1977), 66 Ill. 2d 412, 415; *People v. Montana* (1942), 380 Ill. 596, 608.) To construe the section of the statute under consideration as mandatory would permit a legislative infringement upon the exercise of the judicial function of imposing sentence.

Article II, section 1, of the Illinois Constitution of 1970 provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." The General Assembly has the power to enact laws governing judicial practice only where they do not unduly infringe upon the inherent powers of the judiciary. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 59; *People v. Callopy* (1934), 358 Ill. 11.) Furthermore, it is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department. *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149.

A statute should be interpreted so as to avoid a construction which would raise doubts as to its validity. (*Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363.) It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can be reasonably done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged. *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 389; *Illi-*

*nois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561.

In the instant case, in contrast to *Youngbey,* it is clear that the pronouncement of sentence is at the heart of the judicial function. A construction which would hold sections 5—4—1(c) and 5—8—1(b) to constitute a mandatory requirement would clearly render the provisions an unconstitutional invasion of the inherent power of the judiciary. However, a construction which rendered the sections to be solely directory would not.

In *Youngbey,* in construing the import of the term "shall," we observed:

> "Generally, the use of the word 'shall' is regarded as indicative of a mandatory intent. [Citations.] We recognize, however, that this is not an inflexible rule; the statute may be interpreted as permissive, depending upon the context of the provision and the intent of the drafters." (*People v. Youngbey* (1980), 82 Ill. 2d 556, 562.)

In the instant case, to hold that the term "shall" denominates a mandatory requirement imposed upon the judiciary at sentencing would be to find the statute to be constitutionally invalid. As we presume that the legislature intended to enact a valid statute, we read "shall" in this context as permissive rather than mandatory. Sutherland, in his treatise on statutory construction, supports such a result. In his words:

> "Constitutional principles requiring separation of powers of government weigh in favor of directory interpretations for statutes which give directions to the courts. A statute directing judicial action, although it may be expressed in preemptory terms, will be construed as permissive or directory only, where constitutional principles of separation of powers require a free and unrestrained exercise of judicial discretion." 2A A. Sutherland, Statutory Construction sec. 57.16, at 439 (4th ed. 1973).

Here, the defendants failed to request a statement of reasons for the sentences given. The statute not being

mandatory, there was no independent duty upon the court to give a statement of reasons. Instead, the right is purely personal to the defendants and thus may be waived. Accordingly, we hold that where a defendant fails to request a statement of reasons for a particular sentence, the issue is waived.

The judgments of the appellate court in these consolidated cases are affirmed.

*Judgments affirmed.*

JUSTICE SIMON, dissenting:

"The question 'Why?' states a primitive and insistent human need. The small child, punished or deprived, demands an explanation. The existence of a rationale may not make the hurt pleasant, or even just. But the absence, or refusal, of reasons is a hallmark of injustice. So it requires no learning in law or political philosophy to apprehend that the swift ukase, without explanation, is the tyrant's way. The despot is not bound by rules. He need not justify or account for what he does." Marvin Frankel (former United States district court judge), Criminal Sentences 39 (1972).

I do not agree that sections 5—4—1(c) and 5—8—1(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—4—1(c), 1005—8—1(b)) would be unconstitutional if interpreted as mandatory rather than directory. I believe the majority's *sua sponte* application of the separation of powers doctrine goes far beyond the point the purposes of the doctrine dictate.

Article II, section 1, of the Illinois Constitution of 1970 states: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." It neatly and compactly expresses a doctrine that has become one of the fundamental principles of good governance since the time of Montesquieu: separation of powers. Similar provisions were in our previous Illinois constitutions. See Ill. Const. 1870, art. III; *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 173-

74; *Field v. People ex rel. McClernand* (1839), 3 Ill. (2 Scam.) 79; 6 Record of Proceedings, Sixth Illinois Constitutional Convention 566-67 (indicating the different language in the 1970 Constitution was not meant to change the law of separation of powers).

The doctrine was never meant to create rigidly separated compartments or a divorce among the three departments of government. (See *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58; *In re Estate of Barker* (1976), 63 Ill. 2d 113, 119; *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174; *Hill v. Relyea* (1966), 34 Ill. 2d 552, 557.) As early as 1839, this court stated in *Field v. People ex rel. McClernand* (1839), 3 Ill. (2 Scam.) 79, 83-84:

> "[The constitutional provision calling for separation of powers] does not mean that the legislative, executive, and judicial power should be kept so entirely separate and distinct as to have no connection or dependence, the one upon the other; but its true meaning, both in theory and practice, is, that the whole power of·two or more of these departments shall not be lodged in the same hands, whether of one or many. That this is the sense in which this maxim was understood by the authors of our government, and those of general and State governments, is evidenced by the Constitutions of all. In every one, there is a theoretical or practical recognition of this maxim, and at the same time a blending and admixture of different powers. This admixture in practice, so far as to give each department a constitutional control over the other, is considered, by the wisest statesmen, as essential in a free government, as a separation."

More recently, in *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174-75, the court, after quoting the above from *McClernand*, stated:

> "It has been generally recognized that separation of powers does not forbid every exercise of functions by one branch of government which conventionally is exercised by another branch. Professor Frank Cooper (1 F. Cooper, State Administrative Law 16 (1965)) observes: '[T]he real thrust of the separation of powers philosophy is that each department of government must be kept free from the

control or coercive influence of the other departments.' "

Accord, *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58-59; *People v. Farr* (1976), 63 Ill. 2d 209, 213; see also *Hill v. Relyea* (1966), 34 Ill. 2d 552, 557.

James Madison, the father of the United States Constitution, agreed. Federalist Paper No. 47, of which Madison is generally credited with being the author, states that the accumulation of powers in the same hands may be called the very definition of tyranny and that such a situation is exactly what the doctrine of separation of powers was intended to prevent. It emphasizes, however, that the doctrine was not meant to so rigidly separate the governmental branches as to allow one branch no control over or no partial agency in the act of the others. It states that in fact some blending of power is inevitable.

The specific issue before us is whether sections 5—4—1(c) and 5—8—1(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—4—1(c), 1005—8—1(b)) are infringements on judicial prerogative. Both sections require the trial judge to specify on the record the factors which led him to the particular sentence pronounced.

The majority notes in passing that previous cases have held that the legislature has the power to enact laws governing judicial practice that do not *unduly* infringe upon the inherent powers of the judiciary. (See *People v. Youngbey* (1980), 82 Ill. 2d 556, 560; *People v. Cox* (1980), 82 Ill. 2d 268, 274; *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 59; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149; *People v. Callopy* (1934), 358 Ill. 11, 15.) In *Youngbey* this court said:

> "The General Assembly has the power to enact law governing judicial practices when the laws do not *unduly* infringe upon the inherent powers of the judiciary ***." (Emphasis added.) (*People v. Youngbey* (1980), 82 Ill. 2d 556, 560.)

Little more than lip service is given to this precedent, however. In fact, reading the majority opinion, one gets the

feeling that the conclusion that a mandatory reading of the statutes would be unconstitutional has been reached before this standard is mentioned. No enlightenment as to why this infringement on judicial power is undue is offered. Instead, the majority asserts that, unlike in previous cases, the statutes at issue here involve a procedure to be followed during the actual sentencing. According to the majority, they affect the content of the sentence, and therefore strike at the heart of a clear judicial function. Thus, they are unconstitutional if interpreted to be a mandate to the court.

The statutory sections in issue do not in any way affect the ability of a trial judge to pronounce the sentence he feels is most appropriate. They dictate nothing as to the substance of the sentence. The trial judge has the freedom to sentence a defendant to anything he deems appropriate; all the statutes require is that he state what factors influenced him in arriving at his decision. They "dictate the actual content" only in the sense that they require that reasons for the sentence must be made a part of the record. Thus, they change the substance of the sentence only if we believe that many of the sentences imposed by the judiciary are completely without justification.

This court has tolerated statutes which are at least as intrusive if not more intrusive on judicial power than the statutes involved in this case. In *In re Griffin* (1982), 92 Ill. 2d 48, we recognized only recently that section 5—1(5) of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 705—1(5)) is an important safeguard in the process of committing a juvenile to the custody of the Department of Corrections. It provides that "[w]hen commitment to the Department of Corrections is ordered, the court shall state the basis for selecting the particular disposition, and the court shall prepare such a statement for inclusion in the record." In deciding whether to commit juveniles to the Department of Corrections trial courts exercise the same

broad discretion as they exercise in the criminal-sentencing process. We saw no reason to raise a constitutional objection to the statute in *Griffin*, and I do not see how it was any less intrusive on judicial power than the statutes involved in this case.

Moreover, it seems to me that the statute in *Youngbey*, which this court upheld despite arguments that it violated the separation of powers provision, was even more intrusive on judicial power than the statute involved in this case. That statute requires that a presentence report be given to and considered by the judge before he sentences a defendant. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1.) Unlike the statutory sections being considered here, it directs a judge to actually consider factors that he might otherwise wish to ignore. He is required to make the content of the presentence report a part of his thought process.

Even more obtrusive are the many statutes in our criminal code that set the maximum and minimum punishments for particular kinds of crime. These, surely, strike at the very heart of the sentencing function that the majority claims is "exclusively" judicial. Yet for centuries legislatures have exercised this power, and courts have accepted the authority of legislatures to fix the punishment for crimes without suggesting that their doing so is a violation of the doctrine of separation of powers.

The legislature of this State obviously has an interest in ensuring that our entire system of criminal justice is workable and fair to all concerned with it. Legislators declare what acts will be illegal and provide the permissible range of punishments. They put the ball in motion and obviously are interested in what comes after. By requiring judges to give reasons for the sentences they impose, legislators may become better informed and able to set punishment ranges. The cause of uniformity in punishment is promoted and appellate review of sentencing errors is facilitated, all without

imposing any hardship on or taking any discretion away from the trial judge. The ability of the courts to decide individual cases and sentence individual defendants is completely unimpaired.

It should be noted that this is not a case in which a legislative enactment conflicts with a judicial rule of procedure. There is no rule that prohibits criminal trial judges from giving reasons for the sentences they impose (in fact, the constitutionality of such a rule could be seriously questioned). If such a conflict had existed, the separation of powers issue would be very different. The court would be faced with the question of which law to follow, the rule or the statute, and perhaps then an analysis of whether the subject matter was essentially legislative or judicial would be relevant.

An unfortunate aspect of the majority's decision is that it emasculates a fair and wise pronouncement of our legislature. The sections of the Unified Code of Corrections in issue here, by requiring that reasons be set forth in sentencing, attempt to prevent the injustice Judge Frankel so eloquently described. Otherwise the sentencing procedure, more than any other aspect of a criminal trial, may appear to be arbitrary and capricious. Numbers may seem to have been taken out of a hat. By interpreting these statutes as directory rather than mandatory, this court has created a situation in which a defendant could request that a trial judge state the factors influencing his sentencing decision and be summarily denied. In such a case the statutes would be merely suggestions to the judiciary; nothing would give the defendant a right to an explanation. The result will be the creation in the eyes of the public of an imperial judiciary—a judiciary that is too busy fighting battles with the legislature over an imaginary encroachment on its independence to understand its relationship with the legislature and the people in proper perspective.