# Illinois Official Reports

## Appellate Court

---

### *People v. Burge*, 2019 IL App (4th) 170399

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHALEAH BURGE, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-17-0399 |
| Filed | December 13, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 16-CM-1074; the Hon. John R. Kennedy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Paul M. McCarthy, and Mariah K. Shaver, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Melissa Schwoerer, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                    JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Presiding Justice Holder White concurred in the judgment and opinion.
Justice Harris specially concurred, with opinion.

## OPINION

¶ 1    In March 2017, defendant, Chaleah Burge, pleaded guilty to one count of theft, and the trial court sentenced her to conditional discharge. Later that month, defendant filed a motion to withdraw her guilty plea and to vacate the judgment, which the court denied.

¶ 2    On appeal, defendant argues the trial court erred in denying her motion to withdraw her guilty plea. We affirm.

¶ 3    After granting defendant's petition for rehearing and considering the additional arguments of counsel, we continue to affirm.

¶ 4                                   I. BACKGROUND

¶ 5    In November 2016, the State charged defendant by information with one count of theft, a Class A misdemeanor (720 ILCS 5/16-1(a)(1)(A), (b)(1) (West 2016)), alleging she knowingly exerted unauthorized control over property of Jane Bond, namely United States currency having a value not in excess of $500, intending to permanently deprive her of the use or benefit of the property.

¶ 6    On March 20, 2017, defendant entered a fully negotiated guilty plea to the charged offense. Prior to accepting her guilty plea, the trial court admonished defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). According to the State's factual basis, Bond had undergone knee replacement and was receiving home care from defendant, who worked for Help At Home. On or about September 1, 2016, Bond and defendant ran errands, and Bond cashed a $280 check. While Bond went into a store, she left her purse in the vehicle with defendant. After running more errands, Bond discovered the money was missing.

¶ 7    The trial court accepted defendant's guilty plea. Thereafter, the court sentenced her to 12 months' conditional discharge, imposed various fines and fees, and ordered her to complete an online shoplifting education class.

¶ 8    Ten days after pleading guilty, defendant filed a motion to withdraw her guilty plea and to vacate the judgment, claiming it was not voluntarily entered. Defendant asserted she was afraid of losing her job if she continued missing work for court proceedings and felt pressured to plead guilty to resolve the case and maintain her employment. She claimed she was unaware she would lose her job if she pleaded guilty. Further, she stated the trial court did not inform her of the collateral consequences of a theft conviction on her ability to obtain and retain employment as required by section 113-4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-4 (West 2016)), which was in effect when she pleaded guilty. As a result of her guilty plea, defendant lost her employment.

¶ 9    In May 2017, the trial court conducted a hearing on defendant's motion. Defendant testified she was 23 years old. She is licensed as a certified nursing assistant and had been employed at

Aging In Place on the day she pleaded guilty. On March 28, 2017, defendant was informed by her employer that the State had notified it of her theft conviction. Defendant was fired because of her conviction and had been unable to find additional employment in home health care. She testified she did not realize she would lose her job by pleading guilty and would not have done so had she known.

¶ 10    In its ruling, the trial judge stated he considered section 113-4 of the Code, Illinois Supreme Court Rule 402 (eff. July 1, 2012), and various cases. The judge stated, in part, as follows:

"I think that the statute that the defendant cites is directory. There are no direct, immediate and automatic consequences under the court's control that deal with employment. What Rule 402 is about is advising the defendant of those constitutional rights that she has that are involved with the criminal process and that she is made aware of and then is advised giving up through the entry of a plea of guilty. It's clear that this is done in a voluntary fashion by—according to the record, that this is done in a voluntary fashion by [defendant]. She was advised, as she was supposed to be, by Supreme Court Rule 402 of the nature of the charge, the range of penalties and those essential constitutional rights that are in Rule 402. That is the right to require the presumption of innocence, the right to require proof beyond a reasonable doubt, the right to confront and cross[-]examine witnesses, the right to proceed to trial, trial by jury or trial by judge, the right to present witnesses and evidence on your behalf, [and] the right to testify or choose not to testify. Those are the fundamental constitutional rights that are at issue when someone enters a plea of guilty and those [defendant] was advised of. That's what's consistent with Rule 402. So, in addition to the statute being one that's directory, the consequences that I believe on the facts [defendant] did suffer are collateral. ***

    The supreme court has decided what's—what a person has to be advised of when they enter a plea of guilty. That is not what's in the, the statute. And I, I think it's correct that the legislature cannot add to what's constitutionally required by the supreme court rule.

    So really the, the question then becomes, because I think the statute cannot be imposed on the court, it is directory rather than mandatory and it does deal with collateral consequences. To say they're collateral doesn't mean they're not important because these things are important. Housing, employment, the ability to have an occupational license or a firearm, driver's license are important. They're not trivial. These are important things. That's—I think that's why the statute addresses it. But they are collateral."

While Rule 402 is designed to inform defendants of the constitutional issues involved in pleading guilty, the judge believed adding other issues "runs the risk of essentially watering down the explanation of rights that someone receives because what they're supposed to be advised of [are] those constitutional rights that a criminal defendant has at the time of entry of the plea. And that's what was done."

¶ 11    The trial judge also considered whether a manifest injustice occurred in defendant's plea of guilty, *i.e.*, whether there was a misapprehension of facts or law or where there was doubt as to defendant's guilt and whether justice would be better served through a trial. The judge found nothing to indicate defendant misapprehended the facts or the law of the case or that there was any doubt as to her guilt. As a result of his findings, the judge denied defendant's

motion. This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13     Defendant argues the trial court erred in denying her motion to withdraw her guilty plea because the court's failure to admonish her as required by section 113-4 of the Code violated a mandatory statutory provision or, alternatively, because accepting the plea after the inadequate admonishments resulted in a manifest injustice. We disagree.

¶ 14                         A. Section 113-4(c) of the Code

¶ 15     Initially, we question whether section 113-4(c) of the Code even applies in this case. In effect at the time of defendant's guilty plea in this case, section 113-4 of the Code (725 ILCS 5/113-4 (West 2016)) provided, in part, as follows:

> "(a) When called upon to plead at arraignment, the defendant shall be furnished with a copy of the charge and shall plead guilty, guilty but mentally ill, or not guilty.
>
> (b) If the defendant stands mute a plea of not guilty shall be entered for him and the trial shall proceed on such plea.
>
> (c) If the defendant pleads guilty such plea shall not be accepted until the court shall have fully explained to the defendant the following:
>
> > (1) the maximum and minimum penalty provided by law for the offense which may be imposed by the court;
> >
> > (2) as a consequence of a conviction or a plea of guilty, the sentence for any future conviction may be increased or there may be a higher possibility of the imposition of consecutive sentences;
> >
> > (3) as a consequence of a conviction or a plea of guilty, there may be registration requirements that restrict where the defendant may work, live, or be present; and
> >
> > (4) as a consequence of a conviction or a plea of guilty, there may be an impact upon the defendant's ability to, among others:
> >
> > > (A) retain or obtain housing in the public or private market;
> > >
> > > (B) retain or obtain employment; and
> > >
> > > (C) retain or obtain a firearm, an occupational license, or a driver's license.
> > >
> > > After such explanation if the defendant understandingly persists in his plea it shall be accepted by the court and recorded."

Here, when accepting her guilty plea, the trial court did not advise defendant of the various consequences listed under section 113-4(c) pleading guilty might have.

¶ 16     In *People v. Phillips*, 242 Ill. 2d 189, 195, 950 N.E.2d 1126, 1130 (2011), during a discussion of the *in absentia* warnings required under subsection (e), our supreme court noted how "[s]ection 4 of article 113 of the Code governs when a defendant is called upon to plead at arraignment." In that case, the court had to construe section 113-4(e) of the Code (725 ILCS 5/113-4(e) (West 2000)), which pertained to admonishments in regard to a possible trial *in absentia*, and found it "applies only to a defendant when he appears in open court and pleads not guilty at the time of his arraignment, or is present in court at any later date after his arraignment." *Phillips*, 242 Ill. 2d at 196.

¶ 17    While there is nothing to preclude a court from including the admonishments of section 113-4(c) at a later time, pleas after arraignment are covered by Illinois Supreme Court Rule 402 (eff. July 1, 2012). Prior to the enactment of Rule 402 in 1970, section 113-4 read as follows:

> "(a) When called upon to plead at arraignment the defendant shall be furnished with a copy of the charge and shall plead guilty or not guilty.
>
> (b) If the defendant stands mute a plea of not guilty shall be entered for him and the trial shall proceed on such plea.
>
> (c) If the defendant pleads guilty such plea shall not be accepted until the court shall have fully explained to the defendant the consequences of such plea and the maximum penalty provided by law for the offense which may be imposed by the court. After such explanation if the defendant understandingly persists in his plea it shall be accepted by the court and recorded." Ill. Rev. Stat. 1965, ch. 38, ¶ 113-4.

¶ 18    As the supreme court noted in *People v. Brouhard*, 53 Ill. 2d 109, 112, 290 N.E.2d 206, 208 (1972), at the time of the defendant's plea in that case, this section plus then-Illinois Supreme Court Rule 26(3) (Ill. Rev. Stat. 1965, ch. 110, ¶ 101.26(3)) contained the admonishments previously required before a trial court could accept a guilty plea. In 1970, the supreme court approved Rule 402 governing the acceptance of guilty pleas, which contained everything found in then-section 113-4 and Rule 26(3) (which became Rule 401 before its final version as Rule 402). Ill. S. Ct. R. 402 (eff. Sept. 1, 1970). From the plain language of the earlier version of section 113-4 quoted above, it would appear to relate specifically to the time of arraignment. The subsections outline three possibilities that might occur at arraignment— entering a plea of guilty, entering a plea of not guilty, or standing mute and entering no plea. If a plea of not guilty or no plea was entered, the matter was to be set for trial. If a plea of guilty was being entered, certain admonishments were required in addition to those found in then-Rule 26(3), *i.e.*, that the defendant understands the nature of the charge and the consequences if found guilty.

¶ 19    The rationale for such an application can be found in cases interpreting other subsections within section 113-4. In *People v. Garner*, 147 Ill. 2d 467, 475-76, 590 N.E.2d 470, 474 (1992), our supreme court discussed the importance of *in absentia* warnings during arraignment to prevent a defendant from frustrating the trial process. "Given that the necessity of trial is determined at arraignment, we believe that the admonishment is most effective at that time, when the defendant is also being informed of other significant protections, such as the right to counsel and the right to a jury trial." *Garner*, 147 Ill. 2d at 481. The court went on to note, "[w]e do not read section 113-4(e) as providing the court with an option for when the admonition should be given as much as we read it as not precluding an opportunity for a later admonishment." *Garner*, 147 Ill. 2d at 482.

¶ 20    In *People v. Castro*, 114 Ill. App. 3d 984, 988, 449 N.E.2d 886, 889 (1983), the First District stated the admonishments under then-section 113-4(d) "should be given at the arraignment." The court noted however, if the admonishments were not given, they were to be given at some later date. *Castro*, 114 Ill. App. 3d at 988.

¶ 21    Most notably, subsection (e) is the only one to include the additional reference to "any later court date." No such qualifying language is present in any of the other subsections. The logic of applying subsection (c) to arraignments would appear self-evident. It is only reasonable, in light of the now all-inclusive language of Rule 402, that defendants seeking to plead guilty at

arraignment would require admonitions beyond those otherwise required under the rule. At arraignment, a defendant would have little, if any, access to counsel, would not have seen the State's discovery material, and would not have had any opportunity to test the State's evidence with pretrial motions. A defendant would not necessarily be aware of all the possible ramifications to a guilty plea, which might otherwise be explained by appointed or retained counsel if a plea was contemplated at a later stage of the proceedings.

¶ 22 The defendant, in her petition for rehearing, takes too narrow a view of our conclusion. As stated before, there is nothing about section 113-4 which precludes its use later, in conjunction with the required admonishments of Rule 402. Its location within the arraignment statute is not, as defendant argues in her petition, taken by us as the sole conclusive proof of the statute's intended application at arraignment but instead supports such a conclusion when coupled with the fact the supreme court has created a specific series of admonishments by rule, which must be given at the time of "hearings on pleas of guilty, or in any case in which the defense offers to stipulate that the evidence is sufficient to convict." Ill. S. Ct. R. 402 (eff. July 1, 2012). Neither of those situations describe the arraignment process. When considered in conjunction with the following line of cases, it is clear section 113-4 admonishments alone would not suffice for any later plea.

¶ 23 In *Phillips*, 242 Ill. 2d at 195, the supreme court expressly found section 113-4 of the Code pertains to pleas at arraignment—whether they be guilty or not guilty. In fact, admonishments that only contained the former language of section 113-4 would not be sufficient to support a plea of guilty at a later stage in the proceedings.

¶ 24 In *People v. Packard*, 221 Ill. App. 3d 295, 297, 581 N.E.2d 837, 838 (1991), the Second District found admonishments given at arraignment were not sufficient since "admonitions given at proceedings prior to guilty plea proceedings do not amount to substantial compliance with Rule 402." As a result, the court remanded the defendant's case to allow him to withdraw his plea, where the State sought to rely on admonishments given at arraignment regarding the possible minimum and maximum sentences, which were not otherwise covered at the time of the plea. *Packard*, 221 Ill. App. 3d at 297.

¶ 25 In *People v. Louderback*, 137 Ill. App. 3d 432, 435-36, 484 N.E.2d 503, 504-05 (1985), this court found admonishments given at arraignment could not be relied upon to remedy the lack of such admonishments at a subsequent hearing on a plea of guilty and did not amount to substantial compliance with Rule 402. In a lengthy discussion of substantial compliance with Rule 402, as well as an exhaustive listing of Illinois cases where substantial compliance was either found or absent, this court in *People v. Sutherland*, 128 Ill. App. 3d 415, 425-26, 470 N.E.2d 1210, 1218 (1984), reiterating its holding in *People v. Porter*, 61 Ill. App. 3d 941, 945, 378 N.E.2d 788, 791 (1978), stated that " '[t]o hold that admonitions given at earlier proceedings in a particular case or in other concurrent cases carry over to a subsequent hearing on a plea of guilty violates the spirit and purpose of Rule 402.' " *Sutherland*, 128 Ill. App. 3d at 425 (quoting *Porter*, 61 Ill. App. 3d at 945).

¶ 26 The reason such earlier admonishments do not suffice is because section 113-4(c) admonishments are missing one major component found in Rule 402:

> "[T]hat if he or she pleads guilty there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him or her; or that by stipulating the evidence is sufficient to convict, he or she waives the right to a trial by jury and the right to be confronted with

any witnesses against him or her who have not testified." Ill. S. Ct. R. 402(a)(4) (eff. July 1, 2012).

Substantial compliance with Rule 402 is what is required for all pleas of guilty. The addition of subsections (c)(2) through (c)(4) by the 2017 amendment added, as we explain later, several collateral consequences to pleas of guilty, which are more relevant at arraignment for the reasons stated above. Clearly, section 113-4(c) admonishments may be provided subsequent to arraignment proceedings, but we have found no case where the later failure to give them has been considered error. Under the plain reading of the statute, they are to be given *at the time of arraignment*.

¶ 27 Defendant complains that when the trial court accepted her guilty plea, it did not advise her of the possible consequences pleading guilty might have on her ability to retain or obtain employment. The admonishments required under subsection (c) do not apply in this case, where defendant did not plead guilty at her arraignment. Thus, we find no error.

¶ 28 B. Mandatory or Permissive and Mandatory or Directory

¶ 29 Even if we were to find the admonishments of section 113-4 applicable to this case, we would still find defendant's argument that the trial court's failure to admonish her as required by section 113-4 violated a mandatory statutory provision without merit.

¶ 30 Our supreme court has noted two questions arise when considering the duty imposed by a statute's language and whether any possible consequences result from failing to follow the dictates of the legislature. *People v. Delvillar*, 235 Ill. 2d 507, 514, 922 N.E.2d 330, 335 (2009). First, it must be determined whether the statute is mandatory or permissive. *Delvillar*, 235 Ill. 2d at 514. " '[T]he term "mandatory" refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses.' " *People v. Robinson*, 217 Ill. 2d 43, 51, 838 N.E.2d 930, 935 (2005) (quoting *Morris v. County of Marin*, 559 P.2d 606, 610-11 (Cal. 1977)).

¶ 31 Under the language of section 113-4 of the Code, the trial court shall not accept a guilty plea until the court fully explains the various consequences the defendant faces, including the fact a guilty plea may have an impact on a defendant's ability to retain or obtain employment. The language of the statute is mandatory, as the court does not have discretion in giving the admonishment. See *Delvillar*, 235 Ill. 2d at 516. Thus, assuming it applies, the statute is mandatory because it imposes an obligation on the court to give the explanation.

¶ 32 Now that the mandatory or permissive question has been answered, courts turn to the second question to decide whether a statutory provision is mandatory or directory. *Delvillar*, 235 Ill. 2d at 516. "Under the mandatory or directory question, 'statutes are mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the provision.' " *In re M.I.*, 2013 IL 113776, ¶ 16, 989 N.E.2d 173 (quoting *Delvillar*, 235 Ill. 2d at 514). "However, in the absence of such legislative intent[,] 'the statute is directory and no particular consequence flows from noncompliance.' " *M.I.*, 2013 IL 113776, ¶ 16 (quoting *Delvillar*, 235 Ill. 2d at 515); see also *People v. Four Thousand Eight Hundred Fifty Dollars ($4,850) United States Currency*, 2011 IL App (4th) 100528, ¶ 24, 952 N.E.2d 1259 (stating "noncompliance with a mandatory provision vitiates the governmental action, whereas noncompliance with a directory provision has no such effect").

" 'With respect to the mandatory/directory dichotomy, we presume that language issuing a procedural command to a government official indicates an intent that the statute is directory.' *Delvillar*, 235 Ill. 2d at 517. This presumption is overcome, and the provision will be read as mandatory, under either of two conditions: (1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading." *M.I.*, 2013 IL 113776, ¶ 17.

Whether a statute is mandatory or directory is a question of statutory construction that courts review *de novo*. *Delvillar*, 235 Ill. 2d at 517.

¶ 33    Defendant concedes the legislature did not explicitly dictate a particular consequence for a trial court's failure to comply with section 113-4(c)(4)(B) and, thus, the statute is presumed to be directory. See *Delvillar*, 235 Ill. 2d at 514-15. However, defendant contends the presumption is overcome because the right the provision is designed to protect would generally be injured under a directory reading.

¶ 34    In *Delvillar*, 235 Ill. 2d at 513, 516, the supreme court considered the mandatory-directory question in regard to section 113-8 of the Code (725 ILCS 5/113-8 (West 2006)), which required the trial court to advise noncitizen defendants that a conviction could have " 'the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " (Internal quotation marks omitted.) While presuming the language was directory, the court stated the presumption could be overcome and the provision found to be mandatory "when there is negative language prohibiting further action in the case of noncompliance or when the right the provision is designed to protect would generally be injured under a directory reading." *Delvillar*, 235 Ill. 2d at 517. The court found neither condition applicable. *Delvillar*, 235 Ill. 2d at 517.

¶ 35    In looking at the second condition, the court stated "[t]he right to be protected here is the right of a defendant to intelligently waive a jury trial and enter a guilty plea." *Delvillar*, 235 Ill. 2d at 518. The court found section 113-8 sought to protect this right by informing noncitizen defendants that possible immigration consequences could arise by pleading guilty. *Delvillar*, 235 Ill. 2d at 518. The court then asked "whether the right that the statute intends to protect would be generally injured by a directory reading of the statute." *Delvillar*, 235 Ill. 2d at 518.

¶ 36    The supreme court decided it could not conclude "the right the legislature intended to protect would generally be injured." *Delvillar*, 235 Ill. 2d at 518. The court found the lack of the required admonishment would have no impact on a United States citizen desiring to plead guilty. *Delvillar*, 235 Ill. 2d at 518. While the court found a noncitizen defendant's right to intelligently waive a jury trial and plead guilty might be affected by the lack of the admonishment, "a defendant may have reasons for pleading guilty even in the face of such consequences." *Delvillar*, 235 Ill. 2d at 519. "Thus, because a defendant's right to waive a jury trial and enter a guilty plea will not necessarily be harmed in the absence of the admonishment, we conclude that the presumption of a directory reading of section 113-8 is not overcome." *Delvillar*, 235 Ill. 2d at 519. The court stated as follows:

"In summary, we conclude that section 113-8 is mandatory in that it imposes an obligation on the circuit court to admonish all defendants of the potential immigration consequences of a guilty plea. However, the admonishment is not mandatory with respect to the mandatory-directory dichotomy. Thus, failing to issue the admonishment does not automatically require the court to allow a motion to withdraw a guilty plea.

Rather, the failure to admonish a defendant of the potential immigration consequences of a guilty plea is but one factor to be considered by the court when ruling on a defendant's motion to withdraw a guilty plea." *Delvillar*, 235 Ill. 2d at 519.

¶ 37     In looking at section 113-4 in this case, the right to be protected is the right of a defendant to intelligently waive a jury trial and plead guilty. Section 113-4 attempts to protect this right by informing defendants of various consequences that could arise by pleading guilty, including, *inter alia*, higher sentences for any future convictions; restrictions on where a defendant may work, live, or be present; or the inability to obtain housing, employment, a firearm, or a driver's license. The legislature clearly thought this information would be important to a defendant when making the decision to plead guilty.

¶ 38     We next ask whether the right the statute intends to protect would be generally injured by a directory reading of the statute. We find it would not. The presence or absence of this admonishment does not affect a defendant's right to waive a jury trial in general. A defendant may have reasons for pleading guilty even in the face of employment consequences. For example, even with the possibility of adverse employment consequences, a defendant may still wish to plead guilty in hopes of avoiding jail time.

¶ 39     Moreover, as it applies in this case, when a defendant is convicted of or pleads guilty to pilfering money from a client in the course of employment, common sense dictates that particular job as well as future employment in a similar field could be negatively impacted. Thus, like in *Delvillar*, the failure to provide the admonishment under section 113-4 does not automatically require the trial court to allow a motion to withdraw a guilty plea. Instead, the failure to admonish a defendant of the potential employment consequences of a guilty plea is but one factor to be considered by the court when ruling on such a motion.

¶ 40                                    C. Manifest Injustice

¶ 41     In the alternative, defendant argues (1) she was prejudiced by the trial court's failure to admonish her as required by section 113-4, (2) a manifest injustice occurred when the court accepted her plea, and (3) her motion to withdraw her guilty plea should have been allowed. We disagree.

¶ 42     "A defendant has no absolute right to withdraw his guilty plea." *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439. Instead, a "defendant must show a manifest injustice under the facts involved." *Delvillar*, 235 Ill. 2d at 520.

> " 'Where it appears that the plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to a jury, the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty.' " *People v. Davis*, 145 Ill. 2d 240, 244, 582 N.E.2d 714, 716 (1991) (quoting *People v. Morreale*, 412 Ill. 528, 531-32, 107 N.E.2d 721, 723 (1952)).

"To vacate a plea based on a misapprehension of law or fact, the defendant must establish that her mistaken beliefs or impressions were reasonably justified under all the circumstances when those circumstances are judged by an objective standard rather than by the defendant's own

subjective impression." *People v. Christensen*, 197 Ill. App. 3d 807, 812, 555 N.E.2d 422, 425 (1990).

¶ 43 A trial court has discretion to permit a defendant to withdraw his guilty plea, and that decision will not be reversed on appeal absent an abuse of discretion. *People v. Manning*, 227 Ill. 2d 403, 411-12, 883 N.E.2d 492, 498 (2008). "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *Delvillar*, 235 Ill. 2d at 519.

¶ 44 When considering whether the trial court erred in granting or denying a motion to withdraw a guilty plea, "a reviewing court focuses on whether the guilty plea was affirmatively shown to have been made voluntarily and intelligently." *Delvillar*, 235 Ill. 2d at 520. "[W]ith respect to voluntariness, the pertinent knowledge to be provided by the court prior to accepting a guilty plea includes only the direct consequences of the defendant's plea." *Delvillar*, 235 Ill. 2d at 520. "A trial court's obligation to ensure that a defendant understands the direct consequences of his plea traditionally encompasses those consequences that affect the defendant's sentence and other punishment that the circuit court may impose." *Hughes*, 2012 IL 112817, ¶ 35.

> "Collateral consequences, on the other hand, are effects upon the defendant that the circuit court has no authority to impose. A collateral consequence is one that results from an action that may or may not be taken by an agency that the trial court does not control. [Citation.] Due process does not require that the defendant be informed of the collateral consequences of a guilty plea." *Delvillar*, 235 Ill. 2d at 520-21.

"Examples of collateral consequences have included loss of employment, loss of voting rights, license suspension, and dishonorable discharge from the military." *Hughes*, 2012 IL 112817, ¶ 36.

¶ 45 As the supreme court has found, loss of employment is a collateral consequence. See *People v. Williams*, 188 Ill. 2d 365, 372, 721 N.E.2d 539, 544 (1999). Thus, the failure to admonish a defendant of potential employment consequences does not affect the voluntariness of the plea. Although the failure to admonish a defendant of the collateral consequence of the potential loss of employment does not rise to the level of a constitutional violation, "reversal may yet be required if real justice has been denied or if the defendant has been prejudiced by the inadequate admonishment." *Delvillar*, 235 Ill. 2d at 522.

¶ 46 At the hearing on the motion to withdraw the guilty plea, the trial court considered whether defendant showed a manifest injustice under the facts. While the court found defendant was adversely impacted by her decision to plead guilty, *i.e.*, she later lost her job, nothing indicates there was any doubt of defendant's guilt or that she was acting under a misapprehension of the facts or of the law at the time she pleaded guilty. Although defendant claims she acted under a misapprehension of how pleading guilty would impact her employment, this belief is dubious given the fact she stole from one of her clients while on the job. Common sense dictates that any health care provider, current or future, would have legitimate concerns about an employee's ability to care for a patient when he or she is found to have committed a crime against someone for whom she was employed to care. We find defendant has failed to meet her burden to establish she entered her plea of guilty on a misapprehension of fact or law. Thus, no manifest injustice occurred. Accordingly, the court did not abuse its discretion in denying defendant's motion to withdraw her guilty plea.

¶ 47                          III. CONCLUSION

¶ 48        For the reasons stated, we continue to affirm the trial court's judgment.

¶ 49        Affirmed.

¶ 50        JUSTICE HARRIS, specially concurring:

¶ 51        I agree that the trial court's denial of defendant's motion to withdraw her guilty plea should be affirmed. However, I write separately to express my disagreement with the majority decision on two points. First, I disagree with the majority's determination that section 113-4(c) of the Code pertains only to guilty pleas entered at the time of arraignment. I find that section is not so limited and the admonishments contained therein are required any time a defendant pleads guilty. Second, although I ultimately agree that section 113-4(c) is a directory statute, I disagree with the analysis the majority uses to reach that conclusion in the present case.

¶ 52        Here, the majority concludes that the admonishments required under section 113-4(c) of the Code did not apply to defendant because she "did not plead guilty at her arraignment." *Supra* ¶ 27. In so holding, it cites cases finding that section 113-4 admonishments should be given at the time of arraignment, including the supreme court's decision in *Phillips*, 242 Ill. 2d 189. It cites language from *Phillips* that " '[s]ection 4 of article 113 of the Code governs when a defendant is called upon to plead at arraignment.' " *Supra* ¶ 15 (quoting *Phillips*, 242 Ill. 2d at 195).

¶ 53        Given its holding, the majority clearly interprets the aforementioned statement in *Phillips* as suggesting that section 113-4 applies *only w*hen a defendant pleads guilty at arraignment. In doing so, it reads a limitation into that case that was not expressed by the supreme court. In my view, the statement in *Phillips* that section 113-4 "governs" when a defendant pleads at arraignment reflects that the admonishments in that section are required to be given at that time. I have no quarrel with this proposition. I simply find that it does not also suggest that they are not required when a defendant pleads guilty at some later stage of the case. I note that subsection (c) of section 113-4 of the Code does not contain the word "arraignment," and I find no supreme court decision that limits its applicability in the same manner as the majority. See *Brouhard*, 53 Ill. 2d at 112 (finding that the duty of trial courts in admonishing defendants was governed by section 113-4(c) of the Code in a case where the defendant pleaded guilty on the morning his case was set for trial); *People v. Medina*, 221 Ill. 2d 394, 406, 851 N.E.2d 1220, 1227 (2006) (generally stating that section 113-4(c) of the Code "requires that a defendant's plea of guilty 'shall not be accepted until the court' " admonishes the defendant as set forth therein (quoting 725 ILCS 5/113-4(c) (West 2002))).

¶ 54        Additionally, I find the supreme court's decision in *Delvillar*, 235 Ill. 2d 507, is instructive. There, the defendant filed a motion to withdraw his guilty plea, arguing he was not properly admonished about the possible immigration consequences of his guilty plea pursuant to section 113-8 of the Code (725 ILCS 5/113-8 (West 2006)). *Delvillar*, 235 Ill. 2d at 512-13. Both then and now, section 113-8 requires that before accepting a defendant's guilty plea, the trial court must admonish a defendant that if he or she is a noncitizen, a conviction for the charged offense may result in deportation, exclusion from admission to the United States, or denial of naturalization under the laws of this country. 725 ILCS 5/113-8 (West 2016).

- 11 -

¶ 55    Of particular note, the defendant in *Delvillar* pleaded guilty more than two years after he was charged and well after his arraignment. *Delvillar*, 235 Ill. 2d at 511. Notwithstanding that the statutes involved in the instant case and *Delvillar* are both contained in article 113 of the Code—entitled "Arraignment"—the supreme court did not find, as the majority finds here, that the statutory admonishments apply only to guilty pleas at arraignment. Instead, it considered whether section 113-8 was "mandatory or directory" to determine whether reversal was required—the same analysis engaged in by the parties in this appeal. See *id.* at 514-19. Ultimately, the court determined that trial courts have an obligation "to admonish all defendants of the potential immigration consequences of a guilty plea" under section 113-8, but with respect to the mandatory-directory dichotomy, the statute is directory. *Id.* at 519. It seems unlikely that the court would have engaged in the analysis that it did if, simply due to section 8's location in article 113 of the Code it could have held that the statutory admonishments pertain only to guilty pleas at arraignment.

¶ 56    Finally, the majority states that it has "found no case where the later failure to give section 113-4(c) admonishments has been considered error." *Supra* ¶ 24. I note, however, that the specific section 113-4(c) admonishments at issue in this appeal, addressing the collateral consequences of pleading guilty, are the result of recent amendments to the statute that became effective on January 1, 2017. See Pub. Act 99-871, § 5 (eff. Jan. 1, 2017) (amending 725 ILCS 5/113-4). Prior to that date, section 113-4(c) required only that the trial court admonish a defendant pleading guilty regarding "the consequences of such plea and the maximum penalty provided by law for the offense which may be imposed by the court." 725 ILCS 5/113-4(c) (West 2014). Also, the preamended version of 113-4(c) was less specific than the guilty plea admonishments otherwise required by Illinois Supreme Court Rule 402 (eff. July 1, 2012). Accordingly, given the recent amendments to section 113-4(c) and the fact that the admonishments required under the previous version of the statute were encompassed within those required by Rule 402, the lack of relevant case authority on the subject is no surprise.

¶ 57    I find only two appellate court decisions, both from the Third District, addressing the amended version of section 113-4(c), and both do so in the context of whether the January 2017 amendments to that section should apply retroactively. See *People v. Stefanski*, 2019 IL App (3d) 160140, and *People v. Young*, 2019 IL App (3d) 160528. Neither case analyzes section 113-4(c) as the majority does nor do they hold that its admonishments apply only at the time of arraignment. Further, I note that, in *Young*, the defendant pleaded guilty more than five months after the State filed charges against her, making it unlikely that she pleaded guilty at her arraignment. *Id.* ¶ 3. In that case, the court also stated that if it had found remand was necessary due to "some other error in the proceedings *** , the amended admonishment statute would apply when the matter return[ed] to the circuit court." *Id.* ¶ 27. Ultimately, neither of these cases support the majority's analysis, and *Young*, in fact, appears to contradict the majority's holding.

¶ 58    As stated, although I disagree with the majority's analysis and find that section 113-4(c) of the Code is not limited to guilty pleas at arraignment, I nevertheless agree with its ultimate determination that section 113-4(c) is a directory statute, as well as its decision to affirm the trial court's judgment. That being said, I find that section 113-4(c) is a directory statute for different reasons than those expressed by the majority.

¶ 59    "With respect to the mandatory/directory dichotomy, we presume that language issuing a procedural command to a government official indicates an intent that the statute is directory."

*Delvillar*, 235 Ill. 2d at 517. However, the presumption is overcome under either of two conditions: (1) "when there is negative language prohibiting further action in the case of noncompliance" or (2) "when the right the provision is designed to protect would generally be injured under a directory reading." *Id.* Here, I think the majority too quickly accepts defendant's concession that the first condition was not met.

¶ 60　　In *Delvillar*, when analyzing whether section 113-8 of the Code was mandatory or directory, the supreme court found no "negative language prohibiting further action." *Id.* The court elaborated on its finding by noting as follows: "For example, the statute does not prevent the circuit court from accepting defendant's guilty plea if the court fails to give the section 113-8 admonishment." *Id.* Here, section 113-4(c) does contain such language, providing that the court "shall not" accept a guilty plea in the absence of the admonishments set forth therein. 725 ILCS 5/113-4(c) (West 2016). This language suggests a mandatory reading of the statute.

¶ 61　　However, "[a] statute should be interpreted so as to avoid a construction which would raise doubts as to its validity." *People v. Davis*, 93 Ill. 2d 155, 161, 442 N.E.2d 855, 858 (1982). Where a mandatory interpretation of a statutory provision would make it constitutionally invalid based on separation-of-powers principles, the provision should be held to be directory. *People v. Gray*, 363 Ill. App. 3d 897, 905, 845 N.E.2d 113, 119 (2006); see also *Davis*, 93 Ill. 2d at 162-63.

¶ 62　　Shortly before *Delvillar* was decided by the supreme court, this court addressed the same section 113-8 issue in *People v. Manoharan*, 394 Ill. App. 3d 762, 916 N.E.2d 134 (2009). There, we also concluded that section 113-8 was directory rather than mandatory. *Id.* at 768. However, in so holding, we stated that if section 113-8 was determined to be mandatory, it would violate the separation of powers clause of the Illinois Constitution. *Id.* (citing Ill. Const. 1970, art. II, § 1). We found as follows:

> "Our supreme court has already set forth with specificity the admonitions that trial courts are required to give defendants prior to accepting a plea of guilty in [Illinois] Supreme Court Rule 402 [(eff. July 1, 1997)]. Accordingly, if section 113-8 were a legislative mandate to further admonish a defendant, the section would violate the separation-of-powers clause of the Illinois Constitution by treading upon an area of courtroom procedures that the Supreme Court of Illinois, through its long-standing, detailed rules governing guilty pleas, has entirely preempted. If the new, additional admonitions affecting guilty pleas that section 113-8 of Code *** purported to mandate are a good idea, the Supreme Court of Illinois must be so persuaded before these additional admonitions can properly be made mandatory." *Id.* at 769.

¶ 63　　Here, for the same reasons expressed in *Manoharan*, a mandatory, rather than directory, reading of section 113-4(c) would violate the separation-of-powers clause of the Illinois Constitution, rendering the statute unconstitutional. Accordingly, section 113-4(c) should be held to be directory rather than mandatory. As a directory statute, the trial court was not required to strictly adhere to its provisions and defendant was required to show a manifest injustice to have the right to withdraw her plea. I agree with the majority that defendant failed to make such a showing in the instant case.