NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180232-U

NO. 4-18-0232

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 3, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| CHRISTINE ELIZABETH ROUSH, | ) | No. 17CF726 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert L. Freitag, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court's sentence was not excessive and defendant's trial counsel was not ineffective at sentencing.

¶ 2        In July 2017, the State charged defendant, Christine Elizabeth Roush, with two counts of murder for stabbing and killing her natural mother, Teresa Poehlman. 720 ILCS 5/9-1(a)(1), (a)(2) (West 2016). In December 2017, defendant pleaded guilty to count I in exchange for the dismissal of count II and the dismissal of another felony case. The sentencing range for count I was 20 to 60 years in the Illinois Department of Corrections, and truth-in-sentencing guidelines required defendant to serve 100% of her sentence. 730 ILCS 5/3-6-3(a)(2)(i) (West 2016)). In January 2018, the trial court sentenced defendant to 40 years in the Illinois Department of Corrections. In February, defendant filed a motion to reconsider the sentence, contending the sentence of 40 years was excessive. The trial court denied the motion, and defendant appealed.

¶ 3	On appeal, defendant raises two challenges to her sentence: (1) the trial court failed to consider certain factors in mitigation and overemphasized factors in aggravation, resulting in an excessive sentence and (2) defense counsel was ineffective for failing to present and argue mitigating evidence through the use of an expert witness, Dr. Terry Killian, commission a mitigation report, or present the fitness report as evidence at sentencing. We disagree and affirm.

¶ 4	I. BACKGROUND

¶ 5	In July 2017, the State charged defendant with two counts of murder, both as Class M first degree murder offenses. The first count alleged defendant, without lawful justification and with intent to kill Teresa Poehlman, stabbed Teresa Poehlman with a knife, thereby causing her death. 720 ILCS 5/9-1(a)(1) (West 2016). The second count alleged defendant stabbed Teresa Poehlman with a knife, knowing that such an act created a strong probability of death to Teresa Poehlman, thereby causing her death. 720 ILCS 5/9-1(a)(2) (West 2016). According to the coroner, Teresa Poehlman died from dozens of stab and incised, or cutting, wounds to her neck and chest. She also suffered multiple fractures of the neck consistent with strangulation. In December 2017, defendant pleaded guilty to count I in exchange for the dismissal of count II and the dismissal of another felony case. The factual basis for the plea revealed Teresa Poehlman was defendant's biological mother and had recently come to the area to meet with defendant. When defendant was initially interviewed, she denied any involvement but acknowledged she and Matthew Isbell had been with the victim the day before her body was discovered. Matthew Isbell provided a statement to police indicating he drove defendant and Teresa to Funks Grove Nature Preserve in McLean, Illinois, where defendant struck Teresa in the

back of the head with a tire iron, strangled her, and repeatedly stabbed her. Defendant left Teresa's body in the nature preserve and returned to Isbell's truck covered with blood.

¶ 6　　　　In January 2018, the trial court conducted a sentencing hearing. Although the presentence investigation report (PSI) contained a great deal of information about defendant's psychiatric history, the court and counsel had already received much of this information previously. An 11-page psychiatric evaluation was submitted by defendant's counsel at a hearing on defendant's sanity and fitness to stand trial, which had been held a month before the plea and two months before sentencing. The evaluation, conducted by Dr. Terry Killian, outlined defendant's previous and present psychiatric issues, her family history, drug usage, criminal history, and mental status. Based on the report, defendant's counsel acknowledged his concerns about defendant's mental status had been addressed and he agreed she was fit to stand trial. The PSI also detailed defendant's psychiatric history and noted her sleep disturbances, which she said had intensified while housed in the McLean County jail. Defendant reported "experiencing nightmares, increased startle responses, flashbacks, and high anxiety." She also recounted a psychiatric history, which included several suicide attempts and a consistent pattern of alcohol and drug abuse since she was 13 years old. The PSI included information from Dr. Killian's forensic evaluation as well defendant's own recitation of her history of physical and sexual abuse. She indicated to Dr. Killian she was sexually abused by multiple men when she was younger, sometimes at the direction of her mother, and was abused by all of her boyfriends over the years. Teresa relinquished her parental rights when defendant was three years old, and thereafter, defendant was raised by Teresa's first cousin and her husband. When defendant became a teenager, she became aware of her mother prostituting herself, and she claimed Teresa was frequently intoxicated, stealing from family, and "going in and out of various jails and

- 3 -

prisons." Although Dr. Killian found defendant fit to stand trial, he diagnosed her with post-traumatic stress disorder (PTSD), depressive disorder, anxiety disorder, and polysubstance abuse disorder. He concluded, although defendant severely abused alcohol and drugs leading up to the murder, she did not have any "crazy, or psychotic thoughts, delusional ideas or auditory hallucination."

¶ 7            As evidence in aggravation, the State first called Scott Denton, a forensic pathologist who performed the autopsy on Teresa Poehlman. The State introduced a total of five autopsy photographs which showed the extent of Teresa's Poehlman's injuries, including multiple stab and incised wounds on her neck. Denton testified there were a total of at least a dozen stab wounds to Teresa's neck. He said the "carotid artery was about 40 percent cut, the jugular vein was completely cut, *** so it was deep to the sides of the neck." In addition, he noted there was evidence Teresa was strangled, and on her chest, he found approximately a dozen more stab wounds. The chest stab wounds were located from Teresa's collarbone down to her chest, puncturing her heart twice. Denton also described evidence of blunt-force trauma to the back of her head, splitting the skin of her scalp. According to Dr. Denton, death would have occurred from either the stab wounds or the strangulation, independently.

¶ 8            Detective Beverlin, with the McLean County Sheriff's Office, testified he was contacted by patrol to respond to the scene of the murder. He found Teresa on her back inside a brushed area in Funk's Grove Nature Preserve in McLean, Illinois. He said his murder investigation uncovered a text message on defendant's cell phone, dated July 1, 2017, at approximately 8:33 p.m., which said, "I'm killing my bio piece of s*** tonight." As part of his investigation, he reviewed surveillance video from a hotel and gas station, which showed defendant, Teresa, and codefendant, Matthew Isbell, together shortly before the murder and

within 15 minutes of the text message. Surveillance video showed them together at a truck stop at 2:36 a.m. on July 2, and then two hours later, defendant and Isbell are seen returning to the hotel without Teresa. Beverlin later interviewed Isbell, who said defendant approached him in the hotel on July 1, 2017 (which was a Saturday), and said she needed to "take care of her mother" "that night" because Teresa planned to report defendant as a prostitute the following Monday and this would prevent defendant from regaining custody of her daughter. Beverlin also testified about taking a statement from defendant in which she denied any involvement in the murder. The State completed their evidence in aggravation by presenting two victim impact statements: one from Teresa's father was read into the record, while the other from Teresa's sister was submitted.

¶ 9        In mitigation, defendant presented five letters of support from family and friends and called four witnesses. Three of the witnesses included defendant's adoptive mother, father, and sister. The testimony revealed the family adopted defendant when she was three years old and she was in constant turmoil caused by the abuse she suffered before the adoption. Her adoptive father and mother testified they currently visit and speak with defendant several times a week and noticed a positive change in her since she has been taking her medications while incarcerated. All three said they will continue to provide positive support for defendant and will be there for her in the future. Defendant also called Rick Giovanetto, a family friend who helped defendant get enrolled in counseling. He testified he has visited her several times while incarcerated and has witnessed a more positive change since she has been taking medication while incarcerated. He also said defendant has expressed a lot of remorse concerning the incident and he will continue to show support for her.

- 5 -

¶ 10      The State argued the murder was a calculated, planned attack against defendant's

own mother and "[t]he stabbings and cuttings on her mother's body illustrate the brutality with

which this murder occurred. She not only slashed her neck repeatedly, she nearly completely

severed the jugular, and then stabbed her repeatedly in the chest twice puncturing her mother's

heart." Focusing on the brutality of the offense against "the very person who gave her life," the

State recommended defendant serve 50 years in the Illinois Department of Corrections.

¶ 11      Defense counsel noted the PSI outlined defendant's struggles with substance

abuse, PTSD, anxiety, and suicidal ideation, which "is attributable to a documented history of

neglect and abuse, both physical and sexual, which has had profound effects on her behavior."

He argued she took responsibility for her actions by pleading guilty, is remorseful, and has

potential for rehabilitation. Defense counsel recommended defendant be sentenced to 25 years in

the Illinois Department of Corrections.

¶ 12      After defendant's statement in allocution, the trial court indicated it considered

the information in the PSI, evidence presented at the sentencing hearing, facts presented at the

time of the plea, defendant's statement in allocution, the recommendations of counsel, and all

relevant statutory factors in aggravation and mitigation. The court began its comments by noting

the tragedy of the situation and how seriously it takes its sentencing responsibilities:

>        "The court has a responsibility now to determine and impose
>
>        sentence, and in doing so, the court is directed and guided by the
>
>        law. The court is to consider all of the circumstances that are
>
>        relevant, to consider everything that is presented in aggravation,
>
>        everything that is presented in mitigation, and then fashion a
>
>        sentence that takes all of that into account. In many ways, it's kind

of a global view, very different than the view of the various parties and the people who are touched in real life by these kinds of events."

Before noting this crime seemed to be "planned out" and didn't just happen "on the spur of the moment," the trial court acknowledged each side had a particular perspective but that the court was to "look at everything." The court considered the nature and circumstances of the offense as well as "a great deal of mitigation," including defendant's youth, defendant's background, and that defendant pleaded guilty, accepted responsibility, and "has expressed what the court will indicate now, I believe, to be sincere remorse." The court expressly noted the turmoil of defendant's early life, through no fault of her own, but also recognized she had been taken in and provided with "a good, solid, nurturing upbringing" with the Riggenbach family. Defendant's expressed desire to change was accepted by the court as true and taken into consideration in imposing a sentence. However, the court said, the seriousness and "senselessness" of the crime was, in the court's opinion, "just mind boggling." Before imposing sentence, the court stated:

"In considering all of the evidence in aggravation and mitigation, the court does believe that a departure downward from the maximum potential penalty is appropriate given the mitigation that I've reflected on and the other mitigation contained in this case. However, the court is also of the opinion that the cold, calculated, and brutal nature of this crime demands that a sentence be imposed that is significant, that will indicate the court's belief in the need for not only deterrence of this defendant, but of others, but it is appropriate to the circumstances of the crime."

The court then sentenced defendant to 40 years in the Illinois Department of Corrections.

¶ 13 In February 2018, defendant filed a motion to reconsider the sentence, arguing the trial court's 40-year sentence was excessive. At the hearing on defendant's motion in March 2018, while acknowledging "the court was scrupulous in considering the factors in aggravation and mitigation," defendant asked the trial court to reweigh those same factors because defendant was abusing drugs and alcohol before the murder, which "significantly clouded her judgment and her decision making." Counsel noted defendant was also "suffering from serious mental illness at the time of this incident," including depression, anxiety, and PTSD that was traceable to a history of abuse and neglect in her childhood. Defendant argued counseling and medication could alleviate any threat she posed and that she professed sincere remorse and a desire to change. Defendant pointed to her family and community support, evidenced at the sentencing hearing, and reiterated her request for a 25-year sentence.

¶ 14 Noting all of the factors referenced by defense counsel were previously presented at the sentencing hearing, the State argued the trial court properly weighed them in conjunction with the brutality and senselessness of the offense. It suggested there was no basis for reconsidering the sentence. The court informed the parties, in preparation for the hearing on the motion to reconsider, it reviewed the PSI again and recalled the evidence presented at the sentencing hearing. The court outlined the legal bases upon which a defendant may seek reconsideration of a sentence—to bring to the court's attention any legal errors in the imposition of sentence, or to give the court the opportunity to reconsider the reasoning and propriety of a sentence given—and stated, "I do believe that the court gave significant weight to the mitigation in this case. I do believe that if I didn't say it directly, I'll say it now, the court believes that just the nature of this crime, it's brutal and calculated nature, would support a sentence far in excess

of the court's sentence in this case, closer to the maximum of 60 years, but because of the mitigation the court believes that the sentence that was imposed is appropriate on balance."

¶ 15        This appeal followed.

¶ 16                            II. ANALYSIS

¶ 17        On appeal, defendant argues the trial court failed to properly consider mitigation at sentencing, imposed an excessive sentence, and defense counsel was ineffective for failing to present mitigating factors at sentencing, including failing to call Dr. Killian as an expert witness and provide a mitigation report. We disagree and affirm.

¶ 18                        A. Excessive Sentence

¶ 19        A trial court has broad discretion in imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448, 841 N.E.2d 889, 912 (2005). " 'In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed.' " *People v. Hestand*, 362 Ill. App. 3d 272, 281, 838 N.E.2d 318, 326 (2005) (quoting *People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d 673, 681 (2001)). This does not necessarily mean each factor carries the same import, but that they are entitled to the same consideration. An earlier *Hernandez* court (*People v. Hernandez*, 204 Ill. App. 3d 732, 740, 562 N.E.2d 219, 225 (1990)), addressing the same issue, observed that "[t]he weight to be accorded each factor in aggravation and mitigation in setting a sentence of imprisonment depends on the circumstances of each case." In fact, the seriousness of the offense is the most important factor. See *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53, 23 N.E.3d 430; *People v. Murray*, 2020 IL App (3d) 180759, ¶ 30, 148 N.E.3d 235 (the seriousness of the offense is considered the most important factor in determining a sentence). "A defendant's rehabilitative potential and other

mitigating factors are not entitled to greater weight than the seriousness of the offense." *People v. Pippen*, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001).

¶ 20　　　　Defendant contends the trial court failed to consider certain mitigating factors stemming from defendant's childhood trauma, victimization, and history of abuse or failed to give sufficient weight to those factors. However, we have said before, "[o]n review, we are not to focus on a few words or sentences of the sentencing court but, rather, should consider the record as a whole." *People v. Palen*, 2016 IL App (4th) 140228, ¶ 66, 64 N.E.3d 181. First, "[a] trial court is not required to detail precisely for the record the exact process by which it determined the penalty, nor is it required to articulate consideration of mitigating factors." *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51, 56 N.E.3d 467. Further, the court is not required to recite and assign a value to each factor it has considered. *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494. Next, "we adhere to a presumption that the sentencing court considered all relevant factors and any mitigation evidence presented." *Jackson*, 2014 IL 123258, ¶ 48; see also *Pippen*, 324 Ill. App. 3d at 652. And lastly, but by no means of least importance, defendant appears to purposely ignore the actual words of the trial court as it imposed sentence. It was for this reason we included the court's comments above. The trial court began by noting it had considered "the information contained in the presentence report, considered the evidence presented today at this hearing, considered the statement of facts presented at the time of the defendant's plea, the court has considered the recommendations of counsel, the defendant's statement here today in allocution, as well as all of the relevant statutory factors in aggravation and mitigation." In *People v. Alexander*, 239 Ill. 2d 205, 213, 940 N.E.2d 1062, 1066 (2010), our supreme court, when confronted with a similar claim of an excessive sentence, listed those things it considered significant in determining whether the trial court considered appropriate factors in

- 10 -

aggravation and mitigation: "the trial judge stated that he considered the presentence investigation reports, arguments of counsel, and defendant's statement." It noted the court outlined the factors in aggravation it considered most important and expressed an opinion regarding mitigating factors in general. *Alexander*, 239 Ill. 2d at 213-14. Here, the trial court emphasized how seriously it took its sentencing responsibility, stating that "the court is to consider all of the circumstances that are relevant, to consider everything that is presented in aggravation, everything that is presented in mitigation, and then fashion a sentence that takes all of that into account." Noting the nature of the offense itself, the court nonetheless acknowledged, "[t]here's also a great deal of mitigation that the court is, ought to, and will consider." The court referenced defendant's youth, her background, her acceptance of responsibility, and her "sincere remorse," noting the state of her "early life" and how there was "nothing fair about it. None of that was [her] fault. I recognize that."

¶ 21 Defendant claims the trial court "failed to acknowledge the evidence of the vast support of [defendant's] family and community." Like the remainder of defendant's claims related to sentencing, the record belies this assertion as well. The court specifically mentioned defendant's adoptive family and the "good, solid, nurturing upbringing" they provided and how some of defendant's comments in allocution reflected her ultimate appreciation of it. The court also referenced the content of at least one of the letters submitted on defendant's behalf and how both the writer and the court were of the opinion defendant has the capacity for rehabilitation and change. At the conclusion of its explanation, the court specifically noted "a departure downward from the maximum potential penalty is appropriate given the mitigation that I've reflected on and the other mitigation contained in this case," but that the "cold, calculated, and brutal nature of this crime demands that a sentence be imposed that is significant" to serve as a deterrent not only

for defendant, but for others as well. There is nothing wrong with that perspective. "A sentencing court is not required to award a defendant's rehabilitative potential 'greater weight than the seriousness of the offense.' " *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 17, 55 N.E.3d 97 (quoting *Alexander*, 239 Ill. 2d at 214). "Because the trial court is in a better position to observe the witnesses and consider the relevant factors, its sentencing determination is entitled to great deference." *People v. Kenton*, 377 Ill. App. 3d 239, 245, 879 N.E.2d 402, 407 (2007). Accordingly, when a sentence falls within the statutory range of sentences possible for a particular offense, it is presumed reasonable. *People v. Moore*, 41 Ill. App. 3d 3, 4, 353 N.E.2d 191, 192 (1976).

¶ 22        Given this deference, " '[a]bsent an abuse of discretion by the trial court, a sentence may not be altered upon review.' " *People v. Hensley*, 354 Ill. App. 3d 224, 234, 819 N.E.2d 1274, 1284 (2004) (quoting *People v. Kennedy*, 336 Ill. App. 3d 425, 433, 782 N.E.2d 864, 871 (2002)). An abuse of discretion will be found "where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense[,]' " *Alexander*, 239 Ill. 2d at 212 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000)), or where the court's sentencing decision is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26, 82 N.E.3d 693.

¶ 23        Here, the nature of the offense and the relationship of the victim to the defendant made this, as the court said, "not only a serious crime, not only a tragic thing, but something that was completely unnecessary *** the senselessness of this event is just mind boggling." Defendant stabbed her mother to death by stabbing and slashing her throat at least a dozen times, stabbing her upper chest a dozen times, hitting her in the head with a tire iron, and strangling her.

This was done, not because of an argument or struggle, but to keep her from disclosing defendant was engaged in prostitution, thereby impacting her ability to regain custody of her two-year-old daughter. She pleaded guilty to murder, a Class M Felony, punishable by a sentence of 20 to 60 years in the Illinois Department of Corrections. 730 ILCS 5/5-4.5-20 (West 2016). The trial court's 40-year sentence fell within the relevant sentencing range, and it was imposed only after a very thorough and well-articulated explanation by the trial court. We will not disturb such a sentence as an abuse of discretion simply because the defendant would prefer we weigh the factors differently. "It is not our duty on appeal to reweigh the factors involved in the circuit court's sentencing decision." *People v. Hageman*, 2020 IL App (3d) 170637, ¶ 19, 146 N.E.3d 793.

¶ 24          Parenthetically, defendant raised these claims on appeal, after having the benefit of the comments of both her own counsel and the court at a hearing on her motion to reconsider the sentence where defendant's counsel began his argument thusly: "I know the court was scrupulous in considering the factors in aggravation and mitigation, but we're asking the court to reweigh those factors; and we respectfully submit that the sentence imposed was excessive." Counsel then mentioned several factors in mitigation referenced here: substance abuse and mental health issues, PTSD caused by her history of physical and sexual abuse, and her capacity for rehabilitation. In denying the motion, the trial court explained it had reread the PSI and the evidence previously presented at sentencing. The court carefully explained the purposes of a motion for reconsideration, noting defendant claimed no legal errors, but merely sought to have the court reconsider its sentence, and it explained the seriousness with which the court takes such motions. The court then, without naming each one, said it "gave significant weight to the

mitigation in this case" and that it believed the sheer "brutal and calculated nature" of the crime would have warranted a sentence closer to the maximum of 60 years, but for all the mitigation.

¶ 25　　　　Trial judges who so scrupulously record their rationale and reasoning for imposition of a sentence, and who give thoughtful consideration to all it entails, should not be the subject of such baseless claims.

¶ 26　　　　　　　　　　B. Ineffective Assistance of Counsel

¶ 27　　　　Defendant also contends trial counsel was ineffective for not presenting the live testimony of Dr. Killian, commissioning a "mitigation report," or presenting the fitness report as evidence at sentencing.

¶ 28　　　　A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show "counsel's performance 'fell below an objective standard of reasonableness.' " *People v. Valdez*, 2016 IL 119860, ¶ 14, 67 N.E.3d 233 (quoting *Strickland*, 466 U.S. at 688). Claims based on defense counsel's trial strategy are normally immune from ineffective assistance of counsel claims. *People v. West*, 187 Ill. 2d 418, 432, 719 N.E.2d 664, 673 (1999). To establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 694). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Peeples*, 205 Ill. 2d 480, 513, 793 N.E.2d 641, 662 (2002) (quoting

*Strickland*, 466 U.S. at 694).

¶ 29    Since a defendant must satisfy both prongs of the *Strickland* standard, failure to meet either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010). "We review a defendant's claim of ineffective assistance of counsel in a bifurcated fashion, deferring to the trial court's findings of fact unless they are contrary to the manifest weight of the evidence, but assessing *de novo* the ultimate legal question of whether counsel was ineffective." *People v. Manoharan*, 394 Ill. App. 3d 762, 769, 916 N.E.2d 134, 141 (2009).

¶ 30    Defendant claims it was objectively unreasonable for trial counsel to fail to investigate or present evidence of defendant's abuse and then fail to call Dr. Killian as an expert witness at sentencing. Defendant cites *People v. Morgan*, 187 Ill. 2d 500, 719 N.E.2d 681 (1999), in support. *Morgan* involved a first degree murder where the defendant claimed he received ineffective assistance of counsel at several stages, including sentencing. *Morgan*, 187 Ill. 2d at 540. After the defendant was found guilty, he was sentenced to death during the capital sentencing phase. *Morgan*, 187 Ill. 2d at 516. In vacating *Morgan*'s death sentence, our supreme court held that mitigating evidence is an extremely important component of " 'the Illinois *capital sentencing scheme*.' " (Emphasis added.) *Morgan*, 187 Ill. 2d at 541 (quoting *People v. Perez*, 148 Ill. 2d 168, 194, 592 N.E.2d 984, 996 (1992)). The court explained, " 'Once an aggravating factor is found sufficient to impose the death penalty, there must be mitigating evidence sufficient to preclude the imposition of the death penalty.' " *Morgan*, 187 Ill. 2d at 541 (quoting *Perez*, 148 Ill. 2d at 194). The court went on to state that "[b]ecause of the critical importance of mitigating evidence, it is well established that defense counsel has a duty to make a reasonable investigation for mitigation evidence to present at the capital sentencing hearing ***." *Morgan*,

- 15 -

187 Ill. 2d at 541. *Morgan* involved the necessity of defense counsel to investigate and provide mitigating evidence when the defendant faced the death penalty, unlike this defendant, who faced a term of years. Further, because of the unique process involved in capital litigation, the need for mitigation was statutorily required. See 720 ILCS 5/9-1(g) (West 1994) (stating the jury's decision on the death penalty must be unanimous and defense counsel only needs to convince one jury of the sufficiency of mitigating evidence). Additionally, the letters of support, mitigation testimony at sentencing, and defense counsel's arguments included evidence of defendant's history of physical and sexual abuse, mental health issues, and difficult upbringing. Further, the trial court had the benefit of Dr. Killian's report prior to defendant's plea and was already aware of the circumstances surrounding defendant's childhood, as well as her mental health issues. We therefore find defendant's reliance on *Morgan* inapt and unpersuasive to reverse a trial court's sentence within the statutory guidelines.

¶ 31 Although counsel may have considered a "mitigation report" prior to defendant's plea, as evidenced by the opening paragraph of Dr. Killian's report, for whatever reason, he chose not to do so; perhaps because of the thorough nature of the report and the fact it contained all the relevant information defendant would have sought from him otherwise. Further, defendant has failed to provide any authority to support her claim defense counsel was required to procure an expert witness at sentencing, or indicating a failure to do so is ineffective assistance of counsel. In fact, defendant fails to point to what crucial information could have been provided or issue raised by Dr. Killian that was not already before the court, or would be through the PSI, testimony of other witnesses, or letters written on defendant's behalf. The PSI provided a detailed summary of defendant's substance abuse, mental health issues, sexual abuse, and problems associated with her mother. Had Dr. Killian been called, the State would then have had

the opportunity to cross-examine him to reinforce his conclusion defendant "was not suffering from the type or severity of psychiatric illness which would have rendered her incapable of adequately appreciating the criminality of her alleged conduct," and that he found no evidence of such in either the police reports or her own disclosures to him. The report also contained additional incriminating statements and information about defendant, which the State could have chosen to highlight through cross-examination as well. Dr. Killian would have had to acknowledge the level of planning and efforts to cover up the crime in which defendant engaged and how that evidenced a well thought out, calculated plan to kill her own mother. It is reasonable to conclude counsel's decision was one of strategy rather than error. "Decisions concerning what witnesses to call and what evidence to present on a defendant's behalf are viewed as matters of trial strategy. Such decisions are generally immune from claims of ineffective assistance of counsel." *People v. Munson*, 206 Ill. 2d 104, 139-40, 794 N.E.2d 155, 175 (2002). An effort to avoid allowing the state to cross-examine Dr. Killian on these matters would appear objectively reasonable, and since defendant must show counsel's performance fell below an objective standard of reasonableness under *Strickland*'s first prong, she fails. See *People v. Dupree*, 2018 IL 122307, ¶ 44, 124 N.E.2d 908.

¶ 32          Defendant is required to satisfy both prongs of *Strickland*, and the failure to satisfy either precludes a finding of ineffective assistance. *Clendenin*, 238 Ill. 2d at 317-18. We therefore need not address the prejudice prong at all. Suffice it to say, everything defendant might have sought through testimony or a "mitigation report" was clearly before the court, and considering the thorough and mindful approach of the trial court at sentencing, defendant could not show prejudice.

¶ 33                                          III. CONCLUSION

¶ 34        For the reasons stated, we affirm the trial court's judgment.

¶ 35        Affirmed.