THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAMKUMAR MANOHARAN, Defendant-Appellant.

Fourth District   No. 4—08—0883

Opinion filed September 21, 2009.

James C. Ten Broeck, Jr. (argued), of Ten Broeck Law Offices, of Chicago, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Linda Susan McClain (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In December 2006, defendant, Ramkumar Manoharan, offered to plead guilty to two counts of delivering a controlled substance within 1,000 feet of a school (720 ILCS 570/407(b)(2) (West 2006)). After admonishing defendant pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402), the trial court accepted his guilty plea, sentenced him to two concurrent six-year prison terms, and recommended that defendant be considered for impact incarceration under section 5—8—1.1 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—8—1.1 (West 2006)).

Defendant appeals, arguing that (1) the trial court erred by failing to admonish him that deportation was a possible consequence of his guilty plea, as required by section 113—8 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/113—8 (West 2006)); (2) his trial counsel was ineffective for failing to advise him that he was not eligible for impact incarceration; and (3) the impact-incarceration statute (730 ILCS 5/5—8—1.1 (West 2006)) violates the separation-of-powers requirement of the Illinois Constitution (Ill. Const. 1970, art. II, §1). We disagree and affirm.

## I. BACKGROUND

In May 2006, the State charged defendant, a resident alien, with three counts of delivering a controlled substance (720 ILCS 570/401(d) (West 2006)) and three separate counts of doing so within 1,000 feet of a school (720 ILCS 570/407(b)(2) (West 2006)). In December 2006, defendant entered into a fully negotiated plea with the State in which he agreed to plead guilty to two counts of delivering a controlled substance within 1,000 feet of a school (720 ILCS 570/407(b)(2) (West 2006)). In exchange for defendant's guilty plea, the State agreed to (1) recommend that the trial court (a) sentence defendant to six years in prison and (b) consider him for impact incarceration, and (2) move to dismiss the remaining four counts against him. Defendant also signed a consent-to-impact-incarceration agreement at that time, which stated, in part, as follows:

"I understand that my commitment to the [i]mpact[-i]ncarceration [p]rogram is entirely dependent upon the decision of the Illinois Department of Corrections [(DOC)].

I understand that I have been recommended by the [c]ourt for this [p]rogram but may *not* be accepted by [DOC] for participation in the [i]mpact[-i]ncarceration [p]rogram." (Emphasis in original.)

Before accepting defendant's guilty plea, the trial court admonished defendant pursuant to Rule 402 (177 Ill. 2d R. 402) but also emphasized the requirements and implications of the impact-incarceration program as follows:

"Under the terms of the agreement, *** upon your plea of guilty to these two charges, you would be sentenced to a term of six years in [DOC] with credit for one actual day previously spent in detention against that sentence.

Most importantly from your perspective would be a recommendation from the [S]tate and your attorney *** that you be sentenced to what's known as impact incarceration, otherwise known as boot camp. There is an offender's consent to impact incarceration *** included in the packet of materials that [the court has] before [it. T]ake a look at that document with [the court's] initial question being if that is your signature which appears on the second page of the document?

THE DEFENDANT: Yes.

THE COURT: And did you review the form with [defense counsel] before signing it?

THE DEFENDANT: Yes, I did.

THE COURT: Did you understand it?

THE DEFENDANT: Um-huh.

* * *

THE COURT: Do you also understand that there will be requirements imposed by the [impact-incarceration] program *** and that you won't have to serve six years, [but] if you are discharged from that program, which is within the sole discretion of [DOC], for any reason, that you will then be subject to the six-year term ***?

THE DEFENDANT: Yes."

Thereafter, the trial court accepted defendant's guilty plea and sentenced him to two concurrent six-year prison terms and recommended that defendant be considered for impact incarceration under section 5—8—1.1 of the Unified Code (730 ILCS 5/5—8—1.1 (West 2006)).

In January 2007, defendant filed a motion to withdraw his guilty plea, asserting that his sentence should be vacated and his plea withdrawn because (1) the trial court failed to admonish him concerning his citizenship status, pursuant to section 113—8 of the Code of

Criminal Procedure, and (2) his trial counsel was ineffective for failing to advise him that he was not eligible for impact incarceration because he was not a United States citizen. At an October 2008 hearing, the trial court denied defendant's motion, finding, in pertinent part, as follows:

"The reason why [the court] wanted the record to be clear that [the court] did not admonish the defendant with respect to the statutory admonishment that was referred to as [section 113—8] [(725 ILCS 5/113—8 [(West 2006))] is because [the court] never ha[s] given that admonishment nor will [the court] until such time as the [s]upreme [c]ourt enacts a rule *** that tells judges it is required. From [the court's] perspective, this is yet another legislative intrusion into the function of the court. *** So, [this court] do[es not] believe that [section] 113—8 is required ***.

Second, regardless of whether *** the defendant was admonished with respect to [section] 113—8, there are other issues that need to be addressed with respect to the motion. Meaning[,] that is not dispositive with respect to the relief that is being requested. For example, the [s]upreme [c]ourt *** set forth the premise upon which courts considering motion to withdraw pleas of guilty must operate under and that is[,] in considering a motion to withdraw a guilty plea, to correct manifest injustice, the court shall evaluate whether the guilty plea was entered through a misrepresentation of the facts or of the law or if there is a doubt of the guilt of the accused and the ends of justice would better be served by submitting the case to trial. Clearly, there are circumstances that have been enunciated by [defense counsel] that would *** relate to *** asking for some type of equitable relief, discretion on the part of [the] court in determining that a manifest injustice has occurred for which there *** should be some relief accorded. But here[,] based upon not just [the State's] representation *** that these were *** felonies, further, that there was a factual basis that was enunciated, *** which would corroborate *** the guilt of the accused ***. ***

*** [T]here is no doubt of the guilt of the accused with respect to the charges that he pled guilty to. The court then has to look to see whether *** there was some type of misrepresentation of the facts or of the law. Well, there was no misrepresentation of the facts because the parties stipulated *** to what the testimony of the witnesses would have been ***. In addition, [the court] do[es not] believe that there was a misrepresentation or misapprehension of the law.

So, this isn't a situation again where one was told one thing and another occurred. This was a situation where there were collateral consequences which were not required to be ascertained or inquired

into by the court and for which would not form the basis of whether
*** the court *** should consider whether the pleas of guilty should
be withdrawn ***.

* * *

In essence, the defendant had the information that was necessary to make the determination, no guarantees were provided him by anyone, including the court, with respect to his actual acceptance into the program, merely a recommendation for it. The defendant persisted in making a knowing and voluntary plea of guilty and ask[ed] the court to concur with the joint recommendation of counsel with respect to the sentence ultimately imposed.

Deportation is a collateral consequence of a plea. *** [T]he motion is denied."

This appeal followed.

## II. ANALYSIS

### A. Defendant's Claim That Section 113—8 Required the Trial Court to Admonish Him That Deportation Was a Possible Consequence of His Plea

Defendant argues that the trial court erred by failing to admonish him pursuant to section 113—8 of the Code of Criminal Procedure (725 ILCS 5/113—8 (West 2006)) that deportation was a possible consequence of his guilty plea. Defendant contends that by finding that it was not required to so admonish him, the court erroneously implied that section 113—8 violated the separation-of-powers clause of the United States and Illinois Constitutions. Essentially, defendant asserts that because section 113—8 mandated that the court admonish defendant that he could be deported, and the court failed to do so, such failure rendered his guilty plea invalid. We disagree.

#### 1. *The Standard of Review and Section 113—8*

To determine whether the trial court erred by failing to admonish defendant pursuant to section 113—8 (725 ILCS 5/113—8 (West 2006)), we must determine whether section 113—8 is mandatory or directory. Whether a statute is mandatory or directory is a question of statutory construction, which we review *de novo*. See *People v. Ramirez*, 214 Ill. 2d 176, 179, 824 N.E.2d 232, 235 (2005) (noting that the construction of a statute is a question of law that must be reviewed *de novo*).

Section 113—8 of the Code of Criminal Procedure states the following:

"Before the acceptance of a plea of guilty *** to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:

'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation \*\*\* under the laws of the United States.' " 725 ILCS 5/113—8 (West 2006).

## 2. *The Mandatory-Directory Dichotomy and Section 113—8*

Initially, we note that defendant's contention requires us to answer two separate and distinct questions. We must first determine whether the legislature attempted to make section 113—8 a required admonition. See *People v. Robinson*, 217 Ill. 2d 43, 53, 838 N.E.2d 930, 936 (2005) (referring to this first question as the mandatory-permissive dichotomy). If so, we must then determine the consequence of the trial court's failure to give such an admonition—that is, we must then determine whether such a requirement is mandatory or directory. See *Robinson*, 217 Ill. 2d at 54, 838 N.E.2d at 936 (referring to this follow-up question as the mandatory-directory dichotomy).

We note that section 113—8 provides that the trial court "shall" give the admonition regarding the potential for deportation to defendant. Such language "generally indicates the legislature's intent to impose a mandatory obligation" for purposes of deciding whether the legislature attempted to make the admonition a requirement. *Robinson*, 217 Ill. 2d at 50, 838 N.E.2d at 934.

The State does not appear to argue that section 113—8 (1) merely granted the court permission to admonish defendant, if it chose to do so, or (2) was a legislative suggestion—that is, that section 113—8 was not required. (Indeed, the statute requires that the court "shall" admonish the defendant, and thus, the court failed to do something the legislature attempted to make obligatory.) Instead, the State asserts that the issue is one of "consequence in the event the circuit court fails to admonish a defendant of the immigration consequences of a guilty plea." As previously stated, we can resolve this issue of consequence by determining whether the statute is mandatory or directory.

When analyzing the mandatory-directory dichotomy, the word "shall" is not determinative. See *Robinson*, 217 Ill. 2d at 54, 838 N.E.2d at 936 (noting that the word "shall" generally indicates that the legislature attempted to make a statute a requirement, but not necessarily mandatory). To determine whether a statute is mandatory or directory, we must look to the legislative intent of the statute, the best evidence of which is the statute's language. *Robinson*, 217 Ill. 2d at 54, 838 N.E.2d at 936. Thus, an express statutory prescription of the consequence for failure to obey the statute is "very strong evidence" that the legislature intended the statute to be mandatory. *Robinson*, 217 Ill. 2d at 54, 838 N.E.2d at 936. Section 113—8

prescribes no such consequence. See 725 ILCS 5/113—8 (West 2006) (stating that the trial court "shall" admonish the defendant without providing for the consequences if the court fails to do so).

A survey of the cases that address whether section 113—8 is mandatory or directory revealed a two-to-one split, with the majority position concluding that section 113—8 is directory. In *People v. Bilelegne*, 381 Ill. App. 3d 292, 295-96, 887 N.E.2d 564, 566-67 (2008), the First District Appellate Court held that section 113—8 was directory after (1) analyzing the legislative history of section 113—8 and (2) considering the fact that the statute did not account for a consequence. Similarly, in *People v. De Leon*, 387 Ill. App. 3d 1035, 1045, 901 N.E.2d 997, 1008 (2009), the Second District Appellate Court agreed with the court's decision and rationale in *Bilelegne*, concluding that the defendant was not entitled to withdraw his guilty plea simply because the trial court failed to admonish him pursuant to section 113—8. However, in *People v. DelVillar*, 383 Ill. App. 3d 80, 88-89, 890 N.E.2d 680, 688 (2008), a different panel of the First District Appellate Court concluded that section 113—8 was mandatory, focusing on the legislature's use of the word "shall."

■ After reviewing (1) these cases, (2) the statute, (3) the legislative history, and (4) the arguments on appeal, we find more persuasive the cases which hold that section 113—8 is directory. Accordingly, we conclude that the trial court's failure to admonish defendant regarding the immigration consequences of his guilty plea did not entitle him to withdraw his guilty plea.

### 3. *The Supreme Court's Preemption*

In concluding that section 113—8 is directory, we note that we agree with the trial court that if section 113—8 were mandatory under the mandatory-directory dichotomy, it would violate the separation-of-powers clause of article II, section 1, of the Illinois Constitution (Ill. Const. 1970, art. II, §1). Article II, section 1, of the Illinois Constitution provides that (1) "[t]he legislative, executive[,] and judicial branches are separate" and (2) "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, §1. Thus, the legislature is "expressly prohibited" from exercising power that properly belongs to the judiciary. *People v. Joseph*, 113 Ill. 2d 36, 41, 495 N.E.2d 501, 504 (1986). The legislature does not have authority to interfere with a product of the supreme court's supervisory and administrative responsibilities. *Joseph*, 113 Ill. 2d at 45, 495 N.E.2d at 505. Therefore, when a statute conflicts with a supreme court rule, the rule must prevail. *Joseph*, 113 Ill. 2d at 45, 495 N.E.2d at 506.

Our supreme court has already set forth with specificity the admonitions that trial courts are required to give defendants prior to accepting a plea of guilty in Supreme Court Rule 402 (177 Ill. 2d R. 402). Accordingly, if section 113—8 were a legislative mandate to further admonish a defendant, the section would violate the separation-of-powers clause of the Illinois Constitution by treading upon an area of courtroom procedures that the Supreme Court of Illinois, through its long-standing, detailed rules governing guilty pleas, has entirely preempted. If the new, additional admonitions affecting guilty pleas that section 113—8 of Code of Criminal Procedure purported to mandate are a good idea, the Supreme Court of Illinois must be so persuaded before these additional admonitions can properly be made mandatory.

We find support for our decision in the general rule of statutory construction, which requires reviewing courts, when reasonably possible, to construe a statute so as to affirm the constitutionality and validity of the statute. *People v. Waid*, 221 Ill. 2d 464, 480, 851 N.E.2d 1210, 1219 (2006). If we were to construe section 113—8 as other than directory, as we have discussed, it would violate the separation-of-powers requirement of the Illinois Constitution.

## B. Defendant's Claim That His Trial Counsel Was Ineffective for Failing To Inform Him That He Was Not Eligible for Impact Incarceration

■ Defendant next argues that his trial counsel was ineffective because she failed to inform him that he was ineligible for impact incarceration under section 5—8—1.1 of the Unified Code. We disagree.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient *and* that the deficient performance prejudiced the defendant." (Emphasis added.) *People v. Colon*, 225 Ill. 2d 125, 135, 866 N.E.2d 207, 213 (2007), citing *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Failure to satisfy either prong of this test precludes a reviewing court from concluding that counsel was ineffective. *Colon*, 225 Ill. 2d at 135, 866 N.E.2d at 213. We review a defendant's claim of ineffective assistance of counsel in a bifurcated fashion, deferring to the trial court's findings of fact unless they are contrary to the manifest weight of the evidence, but assessing *de novo* the ultimate legal question of whether counsel was ineffective. *People v. Nowicki*, 385 Ill. App. 3d 53, 81, 894 N.E.2d 896, 923 (2008).

The statutory eligibility requirements for impact incarceration are as follows:

"(1) The person must be not less than 17 years of age nor more than 35 years of age.

(2) The person has not previously participated in the impact[-]incarceration program and has not previously served more than one prior sentence of imprisonment for a felony in an adult correctional facility.

(3) The person has not been convicted of a Class X felony, first or second degree murder, armed violence, aggravated kidnapping, criminal sexual assault, aggravated criminal sexual abuse or a subsequent conviction for criminal sexual abuse, forcible detention, residential arson, place of worship arson, or arson and has not been convicted previously of any of those offenses.

(4) The person has been sentenced to a term of imprisonment of 8 years or less.

(5) The person must be physically able to participate in strenuous physical activities or labor.

(6) The person must not have any mental disorder or disability that would prevent participation in the impact[-]incarceration program.

(7) The person has consented in writing to participation in the impact[-]incarceration program and to the terms and conditions thereof.

(8) The person was recommended and approved for placement in the impact[-]incarceration program in the court's sentencing order." 730 ILCS 5/5—8—1.1 (West 2006).

In this case, defendant does not argue that he did not meet one of these statutory requirements. Instead, defendant contends that counsel was ineffective for failing to inform him that DOC had a rule that precluded him from participating in the impact-incarceration program because of his citizenship status. Assuming such a blanket rule exists, we nevertheless conclude that defendant was not prejudiced by counsel's inaction in this regard. Defendant knew that DOC had discretion to discharge him from the program at any time and for any reason.

Here, the trial court merely recommended that DOC consider defendant for impact incarceration as a legislatively enacted substitute for his two concurrent six-year sentences. DOC had no obligation to include defendant in the impact-incarceration program and had the discretion to exclude him for any number of reasons, regardless of his citizenship status. Indeed, defendant signed a written consent to impact incarceration that explicitly stated that there was a chance that he would *"not* be accepted by the [DOC] for participation in the [i]mpact[-][i]ncarceration [p]rogram." (Emphasis in original.) Moreover, the trial court admonished defendant that he may not be

accepted into the program after verifying that he understood the contents of the aforementioned written consent.

Accordingly, defendant could not have been prejudiced by counsel's inaction because defendant was not entitled to participate in the impact-incarceration program, and he knew it. Thus, defendant's trial counsel could not have been ineffective for failing to inform him that he was ineligible based upon his citizenship status.

## C. Defendant's Claim That the Impact-Incarceration Statute Violates the Separation-of-Powers Requirement of the Illinois Constitution

■ Defendant also argues that the impact-incarceration statute, section 5—8—1.1 of the Unified Code (730 ILCS 5/5—8—1.1 (West 2006)), violates the separation-of-powers requirement of the Illinois Constitution. Specifically, defendant contends that the trial court's "recommendation" for impact incarceration improperly delegated the length of defendant's sentence from the judicial branch to DOC, an agency of the executive branch. We disagree.

We review *de novo* the constitutionality of a statute. *Sun Life Assurance Co. of Canada v. Manna*, 227 Ill. 2d 128, 136, 879 N.E.2d 320, 325 (2007).

As previously stated, article II, section 1, of the Illinois Constitution provides that (1) "[t]he legislative, executive and judicial branches are separate" and (2) "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, §1. Therefore, article II, section 1, expressly prohibits any branch of Illinois government from exercising power belonging to another. *Joseph*, 113 Ill. 2d at 42, 495 N.E.2d at 504.

It is undisputed that the judiciary retains exclusive power to impose a sentence. *People v. Davis*, 93 Ill. 2d 155, 161, 442 N.E.2d 855, 858 (1982). Nevertheless, the legislature may provide alternatives, with accompanying qualifications and disqualifications, outside of the sentencing scheme. *People v. Hamilton*, 155 Ill. App. 3d 555, 561, 508 N.E.2d 385, 389 (1987).

Section 5—8—1.1 provides, in pertinent part, as follows:

"If the court finds *** that an offender sentenced to a term of imprisonment for a felony may meet the eligibility requirements of [DOC], the court may in its sentencing order approve the offender for placement in the impact[-]incarceration program conditioned upon his acceptance in the program by [DOC]. *** In the event the offender is not accepted for placement in the impact[-]incarceration program or the offender does not successfully complete the program, his term of imprisonment shall be as set forth by the court in its sentencing order." 730 ILCS 5/5—8—1.1(a) (West 2006).

To fully analyze this issue of statutory interpretation, we first make the unremarkable and rather obvious point that our constitution empowers the legislature to provide for the range of prison terms for each crime. By way of section 5—8—1.1 of the Unified Code, known as impact incarceration or "boot camp," the legislature created, as a matter of legislative grace, a substitute for certain sentencing ranges it had previously codified. Thus, the impact-incarceration recommendation in this case was not a sentence, but merely a possible alternative after the fact of sentencing, with accompanying qualifications and disqualifications, to the six-year sentence the trial court imposed upon defendant pursuant to the legislatively enacted statutory sentencing range for the crime for which he pled guilty. As such, section 5—8—1.1 does not run afoul of the Illinois Constitution's separation-of-powers requirement.

In closing, we note that defendant appears to argue, as best we can tell, that his due-process rights were violated because the legislature gave DOC too much discretion to decide who was eligible for impact incarceration. However, defendant has not cited any authority for this proposition. Supreme Court Rule 341(h)(7) requires that "[p]oints not argued are [forfeited] and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 210 Ill. 2d R. 341(h)(7). This requires that such points be made with citation to the appropriate legal authority in the argument section of the party's brief. *In re Marriage of Wassom*, 352 Ill. App. 3d 327, 333, 815 N.E.2d 1251, 1256 (2004). Thus, defendant has forfeited this argument on appeal.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its statutory assessment of $75 against defendant for costs of this appeal.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.