NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220360-U

NO. 4-22-0360

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 16, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| EUGENE EDWARDS LOUIS, | ) | No. 18CF977 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The appellate court affirmed defendant's sentence.

¶ 2     In September 2018, defendant, Eugene Edwards Louis, was charged with theft, a
Class 4 felony (720 ILCS 5/16-1(a)(2)(B), (b)(2) (West 2018)). In January 2020, defendant
pleaded guilty to that offense. The trial court later sentenced defendant to two years' probation,
requiring him to "fully cooperate with all recommended substance abuse treatment, as directed."
In February 2021, the court revoked defendant's probation and later resentenced him to four
years in prison.

¶ 3     Defendant appeals, arguing that his trial counsel was ineffective for failing to call
defendant's daughters to testify in mitigation at defendant's sentencing hearing. We disagree and
affirm the trial court's sentence.

¶ 4                              I. BACKGROUND

¶ 5                                A. The Charges and Guilty Plea

¶ 6          In September 2018, the State charged defendant with theft. The State alleged generally that defendant, who had previously been convicted of retail theft, stole money from Sinda Saksenberg. In January 2020, defendant pleaded guilty to the theft charge in exchange for an agreed sentence of two years of probation. As part of his probation, defendant was required to "fully cooperate with all recommended substance abuse treatment, as directed."

¶ 7          In May 2020, the State filed a petition to revoke defendant's probation because he was unsuccessfully discharged from Chestnut Health Systems (Chestnut), which provided alcohol addiction treatment. In February 2021, defendant admitted that he violated his probation as alleged in the petition by failing to complete substance abuse treatment. The trial court found the petition was proved, ordered the preparation of a presentence investigation report (PSI), and set the matter for resentencing.

¶ 8                                B. The Resentencing Hearing

¶ 9          In April 2021, the trial court conducted defendant's resentencing hearing.

¶ 10                              1. *Defendant's Motion To Continue*

¶ 11          At the beginning of the hearing, defendant's trial counsel requested a continuance "for the purpose of getting three mitigation witnesses we have not yet gotten in touch with, specifically Marie Louis, Cindy Louis and Charlene Louis, three of [defendant's] daughters." The court asked counsel how long he had known the daughters were potential mitigation witnesses, to which counsel responded as follows:

          "Your Honor, specifically I honestly got the family history when I
          received the April 20th dated pre-sentence investigation report. After speaking
          with [defendant] today, it is apparent that he wished to have them—wished to call

them as witnesses. He had sent a message over the last couple weeks wanting to speak with me in the jail. I did not have a chance to do so with my schedule. So, today is the first that I heard specifically that it is his desire to call his three daughters as witnesses. I probably should have—I may have been able to obtain that information earlier. And, if so, that is on me. However, I was unaware until April 20th of their potential existence as witnesses."

¶ 12    The trial court granted defendant's motion and proposed continuing the sentencing hearing until May 2021. However, after hearing the new date, defendant told his trial counsel that the date likely did not provide enough time for his children "to make travel schedules." Defendant then stated his desire "just to proceed with the hearing," and the court did so.

¶ 13    Neither party presented any evidence in aggravation or mitigation. In closing, the State pointed out that defendant had a consistent criminal record from 1975 through 2018 and had received probation and minimal prison sentences on many of his convictions. Accordingly, the State argued, because probation and minimal prison sentences had not curbed defendant's criminal behavior, the trial court should sentence defendant to the maximum available extended-term prison sentence of six years.

¶ 14                                    2. *The PSI*

¶ 15    At the sentencing hearing, the trial court stated that it considered the PSI, which contained the following information.

¶ 16    Defendant finished eleventh grade in 1970 before earning his GED in 1996. Since 2004, defendant worked in a variety of labor, retail, and landscaping jobs. Regarding his criminal history, defendant's first conviction was for misdemeanor battery in 1975. Notably, since 1975,

defendant committed numerous felonies, including battery, obstruction of justice, and several retail thefts. Regarding his family history, defendant had five daughters and seven grandchildren. Defendant reported that he maintained a relationship with all his children.

¶ 17 Although defendant had suffered from depression and had used various legal and illegal substances, his primary issues involved his addiction to alcohol, which began when he was 17 years old. While on probation for the underlying offense, defendant tested positive for alcohol several times. Defendant participated well while engaged in inpatient substance abuse treatment. However, defendant struggled with attendance and meetings during the outpatient portion of treatment. Defendant reported (1) experiencing depression to the extent that he could not complete routine functions and (2) consuming large quantities of nonalcoholic beer, even when instructed not to do so.

¶ 18 Defendant was unsuccessfully discharged from Chestnut, at staff request, because of his (1) lack of progress, (2) failure to attend nearly half of the group sessions, (3) noncompliance, (4) failure to attend 12-step meetings, and (5) lack of engagement with staff to set up individual therapy. Defendant could have reapplied for services but chose not to.

¶ 19 The PSI also included a personal statement that defendant wrote describing how his addictions had "destroyed" his life and how he wanted to "repair" his relationship with his daughters.

¶ 20 3. *The Parties' Arguments and the Trial Court's Sentence*

¶ 21 The State asked for the maximum-available extended-term prison sentence of six years, pointing to defendant's lengthy criminal record in the PSI as a factor in aggravation. Defendant's trial counsel argued that defendant's decades of struggle with alcohol abuse as well as recurring issues of depression and self-medication caused defendant's criminal conduct. He

further argued that a long prison sentence would not put defendant in a better position upon release and that defendant should either be given another sentence of probation or the minimum extended-term sentence of three years.

¶ 22    Ultimately, the trial court sentenced defendant to four years in prison.

¶ 23    C. Defendant's *Pro Se* Ineffective Assistance Claim

¶ 24    1. *The Preliminary* Krankel *Hearing*

¶ 25    Thereafter, defendant filed several motions alleging, among other things, that because trial counsel did not meet with him before the sentencing hearing, he was unable to call his daughters as mitigation witnesses. In December 2021, the trial court conducted a *Krankel* hearing on defendant's allegations. See *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). At that hearing, trial counsel explained to the court that he had spoken with defendant sufficiently in order to adequately represent him and that he was well prepared on the day of sentencing. Further, counsel recalled that he obtained a continuance on behalf of defendant so that he could call his children as witnesses, but defendant expressed his preference to proceed to sentencing that day. Ultimately, the court determined that defendant's claim warranted the appointment of new counsel for further investigation.

¶ 26    2. *The Evidentiary Hearing*

¶ 27    In April 2022, the trial court conducted a hearing on defendant's ineffective assistance of counsel claim, at which defendant was represented by new counsel. Defendant testified that trial counsel should have spoken with him so that he could call various mitigation witnesses at sentencing. Specifically, defendant wanted to call family members, his landlord, his employer, and people he met while at Chestnut.

¶ 28    When the trial court asked defendant what his family members' testimony would

- 5 -

have been, defendant responded, "You know, of course I haven't been a real father, re-incarcerated over—re-incarcerated, a opportunity to, you know, go back into treatment and the type of father that I was to them, and, you know, things of that nature." Defendant explained that (1) his landlord would testify that defendant had been his tenant for eight years and would be able to reside in the same place following his release from prison, (2) his employer would have testified that defendant would have had steady employment and income, (3) workers at Chestnut would have testified that "continued treatment would be more beneficial than prison and it was—an opportunity was still accessible to [defendant]."

¶ 29      The trial court asked defendant whether he made the decision not to obtain a continuance at the sentencing hearing, to which he replied in the affirmative. However, defendant stated that he believed that decision was a mistake, explaining as follows:

"At the point when we brought that up it was for a 60-day continuance and then the fact that it was just brought up I had no opportunity to talk to [trial counsel] before the sentencing and I was under the impression that these individuals were going to have to be subpoenaed. And this is why I wanted to talk to him to get a subpoena for the witnesses to be there, and I never had the opportunity to do that.

So at the sentencing date when I mentioned that to him it was a total surprise. I wasn't prepared to give him all information at that particular moment just right at that particular moment when I've been asking for months to meet with him to get the information to him to get them there to get the testimony that they were going to provide, and I never got it.

And at that point [the judge] said he could not go 60 days. He said I will

go to the 19th. And at this point I just said—I just gave up because I—my daughters live out of state, these other people, you know, it had to have time to get to them and I just needed more time."

¶ 30 Trial counsel testified that defendant had told him only about his wanting to call his daughters to testify and did not mention wishing to call any landlord or employer witnesses. He reminded the trial court that he made a motion to continue so that he could investigate the daughters. However, he would not have called a representative from the treatment provider at Chestnut, as he "believed the potential aggravation that could be obtained through cross examination of such a witness outweighed any potential mitigating evidence they could offer." Counsel stated that he did not know as to what the daughters would testify because they were first brought up as possible character witnesses the day of sentencing.

¶ 31 After hearing arguments, the trial court explained that it had no doubt defendant "was a good father to his daughters and that they would have asked for a second chance for their father," but defendant was being sentenced for "his violation of his prior community[-]based sentence, *** specifically the failure to comply with the treatment." Ultimately, the court found that trial counsel's representation was neither deficient nor prejudicial to defendant.

¶ 32 This appeal followed.

¶ 33 II. ANALYSIS

¶ 34 Defendant appeals, arguing that his trial counsel was ineffective for failing to call his daughters to testify in mitigation at his sentencing hearing. We disagree and affirm the trial court's sentence.

¶ 35 A. The Applicable Law and the Standard of Review

¶ 36 To state a claim of ineffective assistance of counsel, a defendant must allege that

(1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant. *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* "A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Id.* "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy [either] of the prongs precludes a finding of ineffectiveness." *Id.*

¶ 37        " 'We review a defendant's claim of ineffective assistance of counsel in a bifurcated fashion, deferring to the trial court's findings of fact unless they are contrary to the manifest weight of the evidence, but assessing *de novo* the ultimate legal question of whether counsel was ineffective.' " *People v. Walker*, 2021 IL App (4th) 190073, ¶ 29, 188 N.E.3d 1235 (quoting *People v. Manoharan*, 394 Ill. App. 3d 762, 769, 916 N.E.2d 134, 141 (2009)). "A court's evidentiary determination is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Golden*, 2021 IL App (2d) 200207, ¶ 62, 191 N.E.3d 814.

¶ 38                        B. This Case

¶ 39        Defendant argues that his trial counsel rendered ineffective assistance by failing to investigate and call defendant's daughters to testify in mitigation at his sentencing hearing. Defendant asserts that had he called those witnesses, there was a reasonable probability that his

sentence would have been shorter. Defendant's argument is without merit.

¶ 40　　　　Defendant essentially argues that the trial court erred by finding that trial counsel's performance was not prejudicial because the aggravating evidence in the PSI—namely, his struggle with addiction, lengthy criminal history, and failure to complete probation—would have been offset by defendant's daughters' testimony. However, his contention is groundless because there is not a reasonable probability that, had trial counsel called defendant's daughters as mitigation witnesses, the court would have found that the mitigating circumstances warranted a lower sentence than four years in prison.

¶ 41　　　　First, the PSI provided ample evidence in both aggravation and mitigation for the trial court to make its sentencing decision. The report was comprehensive, providing in-depth information regarding defendant's (1) lengthy criminal history, (2) family history, (3) mental and physical health problems, (4) alcohol and drug treatment history, (5) economic status, and (6) status since being sentenced to probation. In addition, defendant wrote a personal statement, in which he detailed his struggle with addiction, described his poor familial relationships, accepted responsibility for his actions, and asked for another "opportunity to save" himself. Further, despite trial counsel not presenting mitigating evidence, counsel nonetheless crafted an argument based on the PSI and his personal experience with defendant that emphasized defendant's struggles with alcohol and successes with treatment, which counsel believed warranted a new order of probation.

¶ 42　　　　Second, we need not speculate as to what the trial court would have done when confronted with the daughters' testimony because the court explicitly considered the impact of that testimony during the *Krankel* hearing, concluding that it would not have "changed the outcome ultimately of the sentence that was received." That finding is well supported by the

record. The court had already been presented with information regarding defendant's addiction, mental health, and familial relationships through the PSI and defendant's personal statement.

¶ 43    At the *Krankel* hearing, when the trial court asked defendant what his daughters' testimony would have been, he replied, "You know, of course I haven't been a real father, re-incarcerated over—re-incarcerated, a opportunity to, you know, go back into treatment and the type of father that I was to them, and, you know, things of that nature." Such testimony would have merely confirmed what the court already heard—namely, that defendant wanted another chance at probation and had a lengthy criminal history. See *People v. Burnett*, 385 Ill. App. 3d 610, 614, 897 N.E.2d 827, 832 (2008) (concluding that counsel was not ineffective because the PSI and argument during sentencing brought forth all the mitigating factors defendant alleged trial counsel should have raised).

¶ 44    Additionally, had defendant's daughters testified, they would have been subject to cross-examination and could have been probed for more aggravating evidence, such as defendant's history of substance abuse and the effect of his addiction upon the family. See *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 105, 126 N.E.3d 703 ("[A] history of substance abuse is a 'double-edged sword' that the trial court may view as a mitigating or aggravating factor.") (quoting *People v. Mertz*, 218 Ill. 2d 1, 83, 842 N.E.2d 618, 662 (2005)).

¶ 45    Last, even without the trial court's finding that the daughters' testimony would be unhelpful, any mitigating effect the daughters' testimony could have presented pales in comparison to the mountain of aggravating evidence contained in the PSI and certainly would not have created "a probability sufficient to undermine confidence in the outcome" of the sentencing hearing. See *Strickland*, 466 U.S. at 694.

¶ 46    Defendant was facing prison for violating his probation by failing to complete an

alcohol treatment program and clearly could not control his drinking and criminal behavior. Based on this record, no reasonable probability exists that the trial court would have resentenced this defendant to probation merely because his estranged daughters testified that he was an absentee father and grandfather who deserved another chance to make things right with his family. Accordingly, defendant was not prejudiced by trial counsel's alleged failure to introduce the daughters' testimony during sentencing.

¶ 47                                    III. CONCLUSION

¶ 48          For the reasons stated, we affirm the trial court's judgment.

¶ 49          Affirmed.