**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230449-U

Order filed March 18, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0449 Circuit No. 23-CF-70 |
| | ) | |
| LEONTAY HICKS, | ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The court had discretion to decline to recommend defendant for impact incarceration and did not abuse its discretion in declining to make such a recommendation.

¶ 2    Defendant, Leontay Hicks, appeals from his sentence of eight years' imprisonment, arguing the Kankakee County circuit court erred by not recommending him for impact incarceration where it had no discretion to do so. We affirm.

¶ 3                           I. BACKGROUND

¶ 4    After a jury trial, defendant was found guilty of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2020)) and not guilty of first degree murder (*id.* § 9-1(a)(1), (2)). The evidence at trial established that on August 3, 2021, Jalmen Sullivan, Treveon Miles, and Deric Wren drove to a gas station and observed defendant exit his vehicle with an assault rifle. Defendant at some point opened fire and was later identified. However, witnesses were subsequently unclear whether defendant was the sole shooter. Wren died of multiple gunshot wounds. Wren was found with a handgun near his body. Rounds of ammunition that had been fired from Wren's gun were also found. Defendant stated that Wren shot at him first and claimed self-defense.

¶ 5    The case proceeded to a sentencing hearing on July 7, 2023. A presentence investigation report (PSI) indicated that defendant was 24 years old at the time of the offense. His only prior offenses included a conviction for unlawful delivery of a controlled substance and traffic offenses. Defendant had one child. The probation officer indicated that defendant appeared to be eligible for impact incarceration under section 5-8-1.1 of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1.1 (West 2022)).

¶ 6    The parties agreed that the applicable sentencing range was 4 to 15 years' imprisonment and that defendant could be eligible for probation or impact incarceration. Wren's aunt provided a victim impact statement. Defendant provided several letters in mitigation. Defendant gave a statement, offering his condolences to Wren's family. The State argued that "probation or impact incarceration sentence would deprecate the seriousness of th[e] offense" and asked defendant to be sentenced to 12 years' imprisonment. Defense counsel asked the court to sentence defendant to probation or recommend him for impact incarceration.

¶ 7    The court indicated that it considered the PSI and the evidence presented in aggravation and mitigation. The court noted that defendant did not have a significant criminal history but he

was on bond for another offense when he committed the instant offense. The court noted that defendant's child would be negatively impacted by his incarceration. The court stated,

"I am finding that—given what happened out there that evening, I am finding that a sentence of probation or conditional discharge would deprecate the *** seriousness of the offense and be inconsistent with the ends of justice. I do find in this matter that imprisonment is necessary for the protection of the public.

Given that, *** this is an 85 percent sentence. You've worked. You don't have a lot of criminal history in your background and *** I certainly don't think by any stretch of the imagination that you're beyond redemption or you're beyond *** rehabilitation. You're a young man. You've got a child that you appear to love very much and a child that you appear to want to be an active parent to. So that needs to be balanced with the seriousness of what you have done.

I think in this matter the appropriate sentence is 8 years in the department of corrections [(Department)] at 85 percent."

Defense counsel asked whether the court would be making an impact incarceration recommendation, and the court indicated that it would not. Defendant filed a motion to reconsider, in which he argued that the court should have recommended impact incarceration. The court denied the motion.

¶ 8                                                    II. ANALYSIS

¶ 9        On appeal, defendant argues that the court erred by declining to recommend defendant for the impact incarceration program. Specifically, defendant contends that, because he met all the eligibility requirements to participate in the program, the court had no discretion to deny

3

recommending him. In the alternative, defendant argues that, if the court had discretion, it abused its discretion by not recommending defendant since it found he had rehabilitative potential.

¶ 10    When considering statutory construction issues, our primary objective is to ascertain and give effect to the intent of the legislature. *People v. Young*, 2011 IL 111886, ¶ 11. A statute's language is the most reliable indicator of legislative intent. *Id.* "To discern the plain meaning of statutory terms, it is appropriate for the reviewing court to consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it." *Id.* If the statutory language is clear and unambiguous, a reviewing court must apply that language without resorting to other aids of statutory construction and must apply the language as written. *Id.* Our review of statutory construction issues is *de novo*. *People v. Watkins-Romaine*, 2025 IL 130618, ¶ 25.

¶ 11    Relevant to this appeal, section 5-8-1.1 of the Code provides,

"(a) The Department may establish and operate an impact program for eligible offenders. If the court finds under Section 5-4-1 that an offender sentenced to a term of imprisonment for a felony may meet the eligibility requirements of the Department, the court may in its sentencing order approve the offender for placement in the impact program conditioned upon his acceptance in the program by the Department. Notwithstanding the sentencing provisions of this Code, the sentencing order also shall provide that if the Department accepts the offender in the program and determines that the offender has successfully completed the impact program, the sentence shall be reduced to time considered served upon certification to the court by the Department that the offender has successfully completed the program. In the event the offender is not accepted for placement in the impact

4

program or the offender does not successfully complete the program, his term of imprisonment shall be as set forth by the court in its sentencing order.

(b) In order to be eligible to participate in the impact program, the committed person shall meet all of the following requirements:

(1) The person must be not less than 17 years of age nor more than 35 years of age.

(2) The person has not previously participated in an impact program and has not previously served more than one prior sentence of imprisonment for a felony in an adult correctional facility.

(3) The person has not been convicted of a Class X felony, first or second degree murder, armed violence, aggravated kidnapping, criminal sexual assault, aggravated criminal sexual abuse or a subsequent conviction for criminal sexual abuse, forcible detention, residential arson, place of worship arson, or arson and has not been convicted previously of any of those offenses.

(4) The person has been sentenced to a term of imprisonment of 8 years or less.

(5) The person must be physically able to participate in physical activities.

(6) The person must not have any mental disorder or disability that would prevent participation in the impact program.

(7) The person has consented in writing to participation in the impact program and to the terms and conditions thereof.

(8) The person was recommended and approved for placement in the impact program in the court's sentencing order." 730 ILCS 5/5-8-1.1(a)-(b) (West 2022).

"The court shall make a specific finding about whether the defendant is eligible for participation in a Department impact incarceration program as provided in Section 5-8-1.1 ***, and if not, provide an explanation as to why a sentence to impact incarceration is not an appropriate sentence." 730 ILCS 5/5-4-1(a) (West 2022).

¶ 12        As relevant here, section 5-8-1.1 of the Code requires that a defendant *shall* meet the eligibility requirements in order to be eligible for impact incarceration. If a defendant meets these mandatory eligibility requirements, then the sentencing court *may* approve the defendant for placement in the program. As the statute plainly provides, even when a defendant meets the eligibility requirements for impact incarceration, the court *may but* is not required to recommend the defendant for the program. Stated otherwise, the court exercises its discretion as to whether to recommend impact incarceration.

¶ 13        In coming to this conclusion, we reject defendant's comparison between Treatment Alternatives to Street Crimes (TASC) probation and impact incarceration in reliance on *People v. Cattaneo*, 147 Ill. App. 3d 198, 200-01 (1986). In *Cattaneo*, this court found that, where a defendant met the eligibility requirements for TASC probation, the court had no discretion to deny it. *Id.* The statute at issue in that case (Ill. Rev. Stat. 1985, ch. 111½, ¶ 6323)[1] indicated that, if a defendant met the eligibility requirements and elected to undergo treatment, the court *shall* order an examination and place the defendant on TASC probation. This is in direct contrast to the *may*

_____

[1]We note that the case cited the 1983 version of the statute. However, our review of the relevant statutes indicates that the chapter at issue was not enacted until December 1983 and was not included in the revised statutes until 1985.

language in the statute at issue here, which provided the court discretion in recommending impact incarceration.

¶ 14    We further reject defendant's contention that the court could not consider any factors outside of section 5-8-1.1 of the Code when deciding whether to recommend defendant for impact incarceration. In support we observe that before considering whether to recommend impact incarceration, the sentencing court must first consider the section 5-4-1 sentencing factors to determine whether to impose a prison sentence and, if so, its duration. Only then does the sentencing court, assuming a defendant meets the mandatory section 5-8-1.1 impact incarceration eligibility factors, consider, in its discretion, whether impact incarceration is an appropriate recommendation. As indicated above, the enumerated factors in section 5-8-1.1 solely determine whether a defendant is eligible for impact incarceration. In determining whether to recommend impact incarceration, the court necessarily considers the same sentencing considerations that guided its decision to impose a term of imprisonment in the first place.[2] The impact incarceration statute is included in the Code and, therefore, the Code is controlling. Compare *People v. Teschner*, 81 Ill. 2d 187, 192-94 (1980) (noting that the Code is not controlling to sentencing provisions outside of the Code, such as the previous iteration of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, ¶ 120.1 *et seq.*)).

¶ 15    We next consider whether the court abused its discretion in declining to recommend defendant for the impact incarceration program. The circuit court's sentencing decisions are entitled to great deference and will not be altered absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). We give the circuit court such deference because it is in

---

[2]We reject defendant's reliance on *People v. Manoharan*, 394 Ill. App. 3d 762, 772 (2009), for the proposition that sentencing principles do not apply. *Manoharan* considered a separation of powers issue, which is not applicable here.

7

the best position to determine the appropriate sentence as it has had the opportunity to weigh defendant's credibility, demeanor, moral character, mentality, environment, and age. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). An abuse of discretion is only found where the court's ruling is arbitrary, unreasonable, or no reasonable person would take the view adopted by the court. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26. A sentence that falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense or greatly at variance with the spirit and purpose of the law. *Alexander*, 239 Ill. 2d at 215.

¶ 16 Here, defendant's eight-year sentence was within the applicable range (720 ILCS 5/24-1.2(a)(2), (b) (West 2020); 730 ILCS 5/5-4.5-30 (West 2020)) and is presumptively valid. See *Stacey*, 193 Ill. 2d at 210. Defendant argues that the court was required to recommend him for impact incarceration as it found that he had rehabilitation potential. However, we note that the seriousness of the offense is the most important factor when sentencing. *People v. Murray*, 2020 IL App (3d) 180759, ¶ 30. "The trial court need not give greater weight to any potential for rehabilitation than to the seriousness of the offense." *Id.* ¶ 33. In reaching its decision, the court indicated that it considered defendant's rehabilitation potential, but based on the seriousness of the offense, believed that he needed to serve his sentence of imprisonment, instead of impact incarceration. We cannot say that this was an abuse of discretion.

¶ 17                                                 III. CONCLUSION

¶ 18 The judgment of the circuit court of Kankakee County is affirmed.

¶ 19 Affirmed.